JIM NITE v. THE STATE.

No. 2087. Decided December 13, 1899.

**1.  Change of Venue by Court of Its Own Motion—Practice on Appeal.**

The discretion confided in district judges by our statute, Code of Criminal Proced-ure, article 613, to change the venue upon their own motion, is judicial and not personal, and, unless it has been abused to the prejudice of the accused, its exercise will not be revised on appeal.

**2.  Same.**

Where it appeared that there had been a previous trial in the county from which the venue was changed which had excited great public interest and general dis-cussion, and certain incidents of which trial entered into and became an issue in a warm political contest in said county subsequently; Held, no abuse of discretion is shown on the part of the court in changing the venue upon the ground that it was improbable that a fair and impartial jury could be had in the county; nor was it an abuse of discretion for the court to refuse to hear proposed evidence contro-verting only the existence of such prejudice as would defeat a fair trial, but which did not controvert the facts above stated.

**3.  Depositions—Refusal of Court to Provide Means to Take.**

There is no statute authorizing trial courts in this State to furnish money to defendants with which to take depositions.

**4.  Depositions—Continuance for—Diligence.**

An application for continuance to take depositions will be held properly over-ruled where no diligence is shown, and where, in addition thereto, the proposed absent testimony is, to a large extent, cumulative and not probably true in the light of the record.

**5.  Murder in Perpetration of Robbery—Indictment.**

A count in an indictment for murder is not invalid to support a charge of murder in perpetration of robbery because it sets out none of the elements of robbery. In an indictment for murder there is no necessity of charging the offense of robbery.

**6. Charge—Limited by Evidence.**

It is always proper to limit the charge of the court to the evidence introduced.

**7. Murder—Charge as to Malice.**

On a trial for murder, where the court, in defining malice, instructed the jury, "By malice aforethought is meant the intentional doing of a wrongful act towards another without legal excuse or justification. It is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from words spoken or acts committed," held substantially correct.

**8. Murder—Indictment—Charge Upon Perpetration of Robbery.**

Under an indictment for murder, it is proper, when there is evidence to that effect, for the court to charge upon murder in the perpetration of robbery, although the indictment does not contain such an allegation.

**9. Same—Conspiracy.**

On a trial for murder shown to have been committed in the perpetration of robbery, it was not error for the court in its charge, in defining conspiracy, to limit it to murder and robbery where the evidence did not raise any other issue.

**10. Same—Principals.**

It is not error, where the question of principal becomes an issue, for the court to charge the law of principals although the indictment did not charge defendant as a principal.

**11. Circumstantial Evidence—Charge.**

A charge upon circumstantial evidence is only required where the evidence is wholly circumstantial. See evidence stated held to show positively that defendant was one of the parties to a bank robbery in perpetration of which the murder was committed.

**12. Murder in Perpetration of Robbery—Conspiracy—Charge.**

On a trial for murder, where the evidence showed it was committed in the perpetration of robbery of a bank by defendant and three confederates and defendant's defense was his identity as one of the parties, a charge of court to the effect that if the jury should find that the conspiracy to commit the robbery was undertaken and deceased killed, yet if they had a reasonable doubt whether the killing was contemplated by defendant or done with his knowledge, in furtherance of the common design to rob; or if they had a reasonable doubt of defendant's identity as one of the parties, or as to his presence at the robbery at the time it was committed, they would, in either event, find him not guilty; Held, to very clearly, fairly, and succinctly state the law applicable to the defenses of defendant.

**13. Same—Charge as to Reconciling Conflicts in Evidence.**

On a trial for murder, where the court has charged the jury that you are the exclusive judges of the facts proved, credibility of witnesses, and the weight to be given to the testimony, a failure to further instruct them to reconcile the testimony if they could, did not constitute objectionable error.

**14. Impeachment of Witness—Predicate for.**

A witness can not be impeached where a proper predicate for the impeachment was not laid on the examination of said witness when upon the stand.

**15. Recalling Witness—Practice.**

Where defendant asked to have the witness he proposed to impeach recalled, and process was ordered and issued for said witness but it. is not shown what became of said process, and no postponement was asked by defendant in order to have the witness brought back, Held, he can not be heard to complain.

**16. Withdrawal of Evidence.**

On a trial for murder, where a deputy sheriff of another county was permitted over objection to testify that defendant had been indicted in another county, and that "he helped the officers of adjoining counties to chase defendant out of the county in 1893 (which was before the offense was committed charged in this case), Held, the court in the charge having instructed the jury not to regard this testimony, its admission was not reversible error.

**17. Evidence—Identity of Defendant.**

On a trial for murder in the perpetration of a bank robbery, it was competent to prove by a witness for defendant, on his cross-examination, that just before the

robbery, while he and one K. and others were waiting in front of a drugstore next door to the bank, as two men passed and went into the bank, K. said, "There goes Jim J." (defendant), and that the man turned and looked back at them when K. made this remark; and that the remark caused witness to look at the men and the man to look back at them. But that witness did not think defendant was the man.

**18. Same.**

As going to prove the identity of defendant as one of the party who robbed a bank and murdered deceased, it was competent for the State to prove that about three weeks after the bank robbery defendant's wife was seen in the Indian Territory, at the dead body of one of the bank robbers who had been with defendant, and recognized as one of the robbers on the day of the robbery.

**19. Same.**

On a trial for murder, where one of the main issues was as to the identity of defendant, and one of the means of his identification was that he had a crippled finger, Held, it was competent to prove by a witness that defendant was shot a year or so before in a distant county, "in a fight between old man Nite and one T. H.," and it was also competent for the said witness to state facts and incidents which refreshed his memory as to the time when defendant was wounded in the hand.

**20. Argument of Counsel—Allusion to Defendant's Failure to Testify.**

On a trial for murder which was committed in the perpetration of a bank robbery, an allusion by counsel for the State in his argument, to the fact that defendant had not explained where he was on the day the bank was robbed, was not an allusion to his failure to testify. Following Arnold v. State, 38 Texas Criminal Reports, 5.

**21. New Trial—Newly Discovered Evidence.**

A motion for new trial for newly discovered evidence is properly refused where the proposed evidence does not come within the contemplation of the statute as to newly discovered evidence, and where the same is neither material nor probably true.

**22. Murder—Indictment—Allegation and Proof—Variance.**

There is no variance where an indictment for murder alleges the killing of two parties, and the evidence shows only the killing of one.

Appeal from the District Court of Rusk, on change of venue from Smith County. Tried below before Hon. W. J. Graham.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The indictment charged appellant with the murder of George Buckingham and Charlie Learned, with a gun, on the 23d day of May, 1894, in Gregg County, while he, defendant, was engaged in the perpetration of robbery.

The indictment was presented in Gregg County, from which there was a change of venue to Smith County, where a trial was had and a new trial granted; and the venue was a second time changed from Smith County to Rusk County by the court of its own motion.

The case is sufficiently stated in the opinion.

James M. Edwards, Wm. Goodman, S. A. Lindsey, W. C. Buford, W. W. Moore, and Rob't Brown, for appellant. [No brief for appellant has come to the hands of the Reporter.]

John B. Carter, District Attorney for the Fourth District, and Rob't A. John, Assistant Attorney-General, for the State, filed an able brief, which, owing to its length, the Reporter regrets can not be reproduced.

BROOKS, JUDGE.—Appellant was indicted in the District Court of
Gregg County, at the spring term, 1897, for killing George Bucking-
ham and Charlie Learned with a gun, said offense being committed in
the perpetration of robbery. The venue was changed to Smith County,
and the venue again changed from Smith to Rusk County, where ap-
pellant was tried and convicted, and his punishment assessed at con-
finement in the penitentiary for life.

The following is a clear statement of all the salient features of the
case, as indicated in the brief of State's counsel: In the spring of
1893, Jim Nite [appellant] under the name of Jim Jones, came into
Gregg County, Texas, and worked that summer at Brown & Flewel-
len's sawmill, several miles north of Longview. Appellant inquired
once or twice the way to Glover's ford, on Cypress Creek. In the fall
of 1893 appellant left the county and returned about the 1st of No-
vember, in company with a man whom he introduced as 'my friend,
Mr. Bennett.' They stayed for some time in and around Green Ren-
fro's, north of Longview, and December 25, 1893, Bennett married one
of Green Renfro's daughters, appellant and Prudy Robertson attend-
ing the marriage. Early in January, 1894, appellant, under the name
of Jones, married Prudy Robertson, near Beckville, in Panola County,
Texas, leaving there the day after the marriage, returned with her
through the Renfro neighborhood, saw and had a conference with Ben-
nett, and then continued his journey north in the direction of the In-
dian Territory. A short time after this Bennett disappeared from the
Renfro community. Nothing more was seen of them until the 23d of
May, 1894, when appellant was seen passing along the sidewalk on the
street in Longview, in company with a stranger, subsequently found to
be Bill Dalton, going in the direction of and into the bank building,
about three minutes before the alarm of robbery was given. The rec-
ognition of appellant as one of the men who entered the bank and who
then and there, assisted by Bill Dalton, robbed Joe and Tom Clem-
mons of money and watches, was positive as being the Jim Jones
aforesaid. Appellant, after entering the bank building, made Tom
and Joe Clemmons, and M. L. Bartholemew, who had entered the
building to give assistance to Joe and Tom Clemmons, line up with a
Winchester rifle, while his partner, Bill Dalton, was taking up the
bank's cash; and then compelled Tom and Joe Clemmons to surrender
their watches, and such money as they had in their pockets. While
Dalton was taking up the bank's cash, two other men, shown to be con-
federates of appellant and Dalton, who had been stationed in an alley-
way, began to shoot Winchester rifles at the citizens of Longview who
were on the streets and alleys of the town, killing George Buckingham
in the eastern end of the alleyway, and shooting Charlie Learned down
in the courthouse yard. When the shooting began, appellant said to
Bill Dalton, 'Our men have opened up the ball outside; hurry up.'
Then in a few minutes appellant and Dalton compelled the two Clem-
monses and Bartholemew to leave the building with and in front of

them, appellant declaring, 'It's our men doing the shooting outside.' They left the building by the back door, coming into the alleyway, where the shooting was. Bartholemew was stationed by them at the side of the man known as Bennett. In a few seconds after this, Bennett was shot down and killed by some one of the citizens of Longview, and the other three men made their escape. Bennett was identified as the man who had married Green Renfro's daughter December 25, 1893. As the three .who escaped left town, they were fired upon by several parties, among whom were the McLean boys. One of the robbers lost his hat. The robbers left town in a northwesterly course, turning to the north and northeast, passing the house of Mollie Denson, who saw and recognized appellant, heard him say something about the bank, and tell the other men to 'hurry up; the Longview mob would be after them.' Appellant had his hat on at this time. Thence passing by the Bullock farm, the man without a hat stopped, and compelled a man there to give him a hat, declaring that they had robbed the Longview bank. Thence the flight went in a straight course, and crossed Cypress Creek at the Glover ford, an old, unused ford, which could not be found by anyone not acquainted with the country. The route thus pursued was in the general direction of the Indian Territory. Shortly afterwards (about three weeks) Bill Dalton was killed in the Indian Territory, and identified as being one of the men who robbed the bank, and Prudy Robertson, wife of Jim Jones (appellant) was found at the place where Bill Dalton was. Prudy Robertson was shown to have been present at the trial of this cause at Tyler, March 8, 1898; and was not used as a witness by appellant. She was also present at the time this cause went to trial in Rusk County, and was not used by appellant as a witness. Appellant's defense was 'Not guilty,' and specially 'that he was not the Jim Jones who worked at Brown & Flewellen's mill in the spring and summer of 1893, and married Prudy Robertson in January, 1894, but that he was in Southwest Texas, in Wilson County, in 1893.' "

Appellant's first assignment, as stated in his motion for new trial, is, "The court erred in refusing to send the case back to Smith County, because it was not properly transferred to Rusk County." The bill presents this matter substantially as follows: "While this case was pending in the District Court of Smith County, with Hon. W. H. Gill presiding, while defendant and his counsel were present in court, the judge made the following announcement: 'That he was satisfied a trial alike fair and impartial to the accused and the State could not be had in said county, and that he intended of his own motion to change the venue of said case to another county, and was inclined to change the venue in said case to Rusk County.' Whereupon defendant, by his counsel, at once objected and protested against the change of venue in said cause of the court's own motion, upon the ground-that a trial alike fair and impartial to the accused and the State could be had in Smith County, and that no condition, or opinions, or impressions, or preju-

dices, or any cause whatever existed in any portion of Smith County which could or would be calculated to prevent a trial in said cause alike fair and impartial to the accused and to the State in said Smith County." Appellant's counsel asked the presiding judge to be sworn, and offered to prove by said judge that he does not now, nor has he ever, resided in Smith County, nor does he reside in the judicial district in which Smith County is situated; that he has not mingled with the people and jurors of Smith County, except to pass through the county and be in the city of Tyler, from time to time, temporarily; that he has had no opportunity to ascertain the sentiment of the people of Smith County with regard to the merits of the case, or with regard to any matter connected with said case. This request was refused by the court, who declined to be sworn. The record shows that no witnesses were summoned, for the purpose of testifying about this matter. Defendant offered to prove by the petit jurors in attendance upon the court, residing in different sections, and who were then in the courtroom ready and willing to testify, that they were acquainted with the sentiment of the people, and that in no part of the county was there any prejudice or feeling either for the accused or the State. Appellant also desired the members of the grand jury to prove similar facts. He was also denied members of the bar to prove the same facts. Among other things stated in the court's order changing the venue to Rusk County, appears the following: "The nature of the cause and the circumstances attending the former trial thereof in this [Smith] county, excited public interest, and resulted in the general discussion of the case, and certain incidents of the trial became an issue in a warm political contest in Smith County, resulting in a general knowledge of the case, and the general formation of opinion as to its merits, disqualifying jurors in the county to such an extent as to render it improbable that a jury alike fair and impartial to the State and the defendant could safely and speedily be procured, and a trial fair and impartial be had in this county." Defendant offered to controvert the opinion of the court as to the existence of prejudice either for the State or defendant, but did not propose to controvert the grounds of said opinion, to wit, the circumstances of the former trial, and the discussion thereof in a warm political contest. It appears from the recitals of the basis upon which the court changed the venue to Rusk County that there had been a previous trial in Smith County, and that the facts involved in the case had to some extent entered into a political controversy, and there had been a general discussion of the case in said contest. The discretion confided in district judges by the article of the Code authorizes them to change the venue upon their own motion, and is a judicial, and not a personal, discretion; and, unless that discretion was abused to the prejudice of appellant, its exercise will not be revised by this court. We have nothing to do with the question as to whether or not it is a dangerous power conferred upon district judges. We are glad to know that no instance of the abuse of the judicial discretion

has been made manifest by the records of this court. Considering the grounds set up in the order changing the venue, we can not say that the discretion was not authorized; nor can we say that appellant's rights have been injured or prejudiced. See art. 613, Code Crim. Proc.; Boyett v. State, 26 Texas Crim. App., 689; Woodson v. State, 24 Texas Crim. App., 153; Bohannon v. State, 14 Texas Crim. App., 271. The discretion vested by said article in the court, as stated, being a judicial discretion, we do not see how or wherein the court erred in refusing to hear testimony as complained herein by appellant.

Appellant's third ground is: "The court erred in refusing to furnish means to take the depositions of defendant's witnesses who resided in the State of Louisiana, and in overruling his motion asking for time in which to take said testimony, after the money had been subscribed by the citizens of Rusk County." We are not apprised of any statute authorizing trial courts in this State to furnish defendants money with which to take depositions. Furthermore, the application for continuance should not have been granted after the citizens had furnished the money to take the depositions, because we think the record shows a total absence of any diligence to take such depositions, and the testimony sought in the interrogatories did not indicate, in the light of the record, or appear to be probably true, if they had so testified. The record shows appellant was arrested on May 10, 1897, while an indictment was pending in Gregg County. The cause was removed to Smith County in December, and March 8, 1898, appellant filed his motion for continuance in the District Court of Smith County for testimony, among other witnesses, of Henry Bonus, Peter Bonus, Albert Bonus, H. Howard Greig, George Grige, alleged to reside in St. Martin Parish, La.; Charles Toffier, Florien Toffier, Bertrand Toffier, and Walter Toffier, alleged to reside in Iberia Parish, La.; also for John Hardy, alleged to reside in Fayette County. These witnesses, except John Hardy, are the witnesses whose depositions were sought to be taken. The first application for continuance was overruled in Smith County, the cause tried, new trial granted, and on February 16, 1898, the venue was changed to Rusk County. Appellant filed his motion for continuance in Rusk County on August 1, 1899, praying for a continuance to take the depositions of the above-named witnesses, except John Hardy; alleging that they would testify that he was near New Iberia, Iberia Parish, La., in May, 1894, the day of the bank robbery and the killing of Buckingham and Learned in Gregg County. Without stating in detail what appellant expects to show by all the witnesses, we deem it sufficient to say, in addition to the above, that there is no diligence shown. The evidence, to a large extent is cumulative, and in the light of this record, is not probably true. We therefore do not think the court erred in refusing to grant the motion for continuance.

Among other things, appellant complains of the the failure of the court to properly instruct the jury on the presumption of innocence

and in limiting the presumption of innocence to his plea of not guilty; also that the charge limits the inquiry of the jury to the second part of the indictment, which count is invalid, because it fails to charge murder in the perpetration of robbery, in that it sets out no element of the offense of robbery. Neither of these objections is well taken.

The third error assigned on the charge is that it limits the inquiry of the jury to the second count in so far as it relates to Buckingham, and relieves the State of the necessity of proving the allegation in said count as to Learned. It is proper to limit the charge to the evidence introduced, as was done in this case. State v. Bradley, 34 Texas, 95. On the question as to there being no necessity of charging the offense of robbery in the indictment for murder, see Wilkins v. State, 35 Texas Criminal Reports, 525; Smith v. State, 31 Texas Criminal Reports, 14.

. Appellant also contends that the court erred when he told the jury the fact that defendant was indicted in Western Texas was not in response to any question, and they would not consider said fact, because said fact, with other facts of like character, was elicited in response to questions asked by the State, and objected to by defendant. We do not think the court erred in this particular.

The court's charge is substantially correct in defining malice. Giles v. State, 23 Texas Crim. App., 281; Gonzales v. State, 19 Texas Crim. App., 394.

Appellant also complains that the court erred in charging on murder in the perpetration of robbery, and in defining robbery, because there was no allegation in said second count of the indictment to authorize it. This question has been disposed of above, adversely to appellant's contention.

The court did not err in defining conspiracy by limiting it to murder and robbery. The evidence does not raise any other issue. Nor did the court err in charging the law of principals simply because the indictment failed to charge appellant as a principal. We do not think the court erred in failing to charge on circumstantial evidence. Such a charge is only required where the evidence is wholly circumstantial. Montgomery v. State (Texas Crim. App.), 20 S. W. Rep., 926; Bennett v. State, 32 Texas Crim. Rep., 216. The evidence shows that while appellant and Bill Dalton were in the bank, robbing it, one of his confederates was standing in the street back of the bank, some 150 feet, and another confederate was about 100 feet from this confederate, and these two confederates began shooting. Thereupon appellant exclaimed to Bill Dalton, in the bank, "Hurry up, the boys have opened up the ball!" Then, when one of the bank officers was forced to go out through a gate in the wall at the back of the bank, and he protested on the ground that he might get killed by the parties shooting out there, the evidence shows that appellant assured him there was no danger, as it was their folks doing the shooting. We think these facts, together with all the other circumstances above detailed,

clearly show appellant was acting with these parties in the robbery of the Longview bank.

Appellant also claims the court failed to charge his defense in an affirmative, distinctive, and separate manner. The defense urged by appellant was charged by the court as follows: "If you should believe from the evidence that there was a conspiracy to commit a robbery, as before explained; and that the same was so undertaken, and that said Buckingham was killed, yet if you have a reasonable doubt whether such general purpose was contemplated and assented to by defendant, or whether it was done (if at all) with his knowledge, and in furtherance of a common design to commit said offense; or if you have a reasonable doubt of defendant's identity as one of the persons engaged in such robbery, if any, or if you have a reasonable doubt of the presence of defendant at the robbery (if any) at the time thereof, —in either event you will find him not guilty." We think this charge very clearly, fairly, and succinctly states the law applicable to the defense urged by appellant.

Appellant's eleventh ground is that the charge on conflicting testimony is erroneous, in that it fails to tell the jury that it is their duty to reconcile the testimony, if they can, so as to give effect to the whole of the testimony. This objection is not well taken, since the court gave this charge: "You are the exclusive judges of the facts proven, of the credibility of the witnesses, and the weight to be given to the testimony."

His twelfth assignment is: "The court erred in refusing to allow the witness Mrs. Mattie Mann to testify that the State's witness Mrs. Mollie Denson told her (Mrs. Mann) that Jack Howard, sheriff of Gregg County, had promised witness Mollie Denson a fine set of furniture if she (Mrs. Denson) would swear against defendant, and make a good strong witness for the State." Appended to the bill presenting this question, is the following explanation by the court: "Mrs. Denson was asked if Jack Howard, sheriff of Gregg County, had not promised her a fine set of furniture if she would be a good witness in this case. She answered, 'No; he had never spoken to her about the case.' She was then asked if she had ever heard any such talk in the community that she was going to get a fine set of furniture for her testimony in the case. She answered 'that some time after she had testified as a witness in the case at Tyler, she did hear something about being given a set of furniture for the manner in which she testified in the trial of the case; thought she heard her uncle speak of it; that she paid no attention to it; did not expect to get anything, and she considered it of no importance. No one had ever said to her that they would give her anything to testify as a witness in the case, but only heard, as above stated, that she would be given a set of furniture for the manner in which she testified.' This all occurred after she had given her testimony, as above stated. She was never asked if any one was to give her anything to testify in the case,

except the question propounded as to Jack Howard, as stated above. She was not asked if she had made the statement to the witness Mrs. Mann, nor to any other person than has already been indicated. When Mrs. Mann was introduced by defendant, and asked if Mrs. Denson had made the statement referred to in the bill of exceptions, the State objected that no predicate had been laid, and they admitted that it had not. The objection was sustained. As to the statement made concerning what was said and done in reference to excusing Mrs. Denson as a witness, it is correct. When the objection to Mrs. Mann's testimony was sustained, they asked to have Mrs. Denson recalled. They were directed that they might have process for the witness, and were told to get it out, and get it off in that evening's mail; and the clerk was ordered to issue the process. What was done with the process the court is not advised. Counsel for defendant stated they did not want to assume the responsibility of getting out process for the witness, and thereby make her the witness of defendant. Witness was not brought back. This occurred more than two days before the case was concluded, and no postponement was ever asked by defendant to get Mrs. Denson back. When counsel for defendant stated to the court, on objection to the testimony of Mrs. Mann being sustained, that he had found out, the evening before, Mrs. Denson would be needed again, and notified the district attorney to have her brought back, the district attorney promptly replied that counsel for defendant did not notify him she was wanted for the purpose for which she is now asked to be recalled, but counsel for defendant notified him he wanted her so he could reopen the Speight matter (she having been asked on the stand whether or not her cousin Oscar Speight had not been accused of being in the robbery), and no intimation was given him that the witness would be wanted for this matter of Mrs. Mann's testimony. There was no denial by counsel for defendant of the statement made by the district attorney." This explanation of the judge, we take it, effectually disposed of appellant's insistence in this particular.

Appellant's thirteenth assignment is: "The court erred in permitting the witness R. E. Neal to testify, over appellant's objection, that he (Neal) was a deputy sheriff of Atascosa County in 1893, and that he had papers for defendant; that defendant had been indicted in Medina County before he was indicted in Neal's county; and he helped the officers of the adjoining counties chase defendant out of the county in 1893." The court, in his charge, instructed the jury not to regard this testimony.

His next assignment is: "The court erred in permitting the witness W. H. Buckhan to state to the jury, over objections of defendant, that just before the robbery, while sitting in front of Lawrence's drugstore, next door to the bank, Dr. Killingsworth said, as the two men passed and went into the bank, 'There goes Jim Jones.'" He also complains because the court permitted Dr. Marshall to testify

that, as the two men passed, and went in the bank, Dr. Killingsworth made a remark about who the men were. The court's explanation to the bill is as follows: "The witness Dr. Marshall was asked by State's counsel 'if Killingsworth said anything as to who either of the men were, as they were passing by them;' and the witness answered, 'Yes,' and nothing further, on that point. As to the witness Dr. Buckhan, he was introduced by defendant, and said that he noticed the man who had on the slicker as they passed them, and that witness did not think defendant was the man, etc. Statement of facts will show his testimony in full. He said the reason that he noticed the man as closely as he did was on account of a remark made by one of his crowd (Killingsworth, Marshall, and witness) that caused the man to turn, and look back at them. On cross-examination by State, as to this matter called out by defendant, witness was asked what the remark was that caused the witness to look at the man and the man to turn and look back. He said that Dr. Killingsworth said, 'There goes Jim Jones.' This remark was made as the men were passing, and as he (witness) was looking for a man by the name of Sol Jones, he thought he might be the man he was looking for, and that he looked at the man to see if he was. The testimony in this case shows that this occurred about thirty feet from the bank; that these men walked immediately in there, and in a moment or so the alarm of the robbery was given. Besides this, the witness Killingsworth had already said in his testimony that the man with the slicker on was Jim Jones; said that he was sitting with his back to the wall and his face to the street when this man passed and was recognized by him. On cross-examination he was asked a number of questions to the effect if he had said to several witnesses that he could not identify defendant. He was asked if he did not state at Tyler that he was sitting with his back to the street and face to the wall, and his feet upon the wall, when the men were passing by, and he answered, 'Yes;' he may have said so; that he did not remember what he did say, and was not certain how they were sitting." We think the explanation of the court appended to the bill of exceptions complained of by appellant in this assignment shows there was no error in admitting the testimony. The act of appellant looking back when his name was called, and the fact that the witness was looking for a man by the name of Jones, coupled with all the other circumstances detailed in the above explanation, render this testimony clearly admissible.

Appellant's next ground is the court erred in permitting Jack Yates, president of the Longview Bank, to testify, over his objections, that he went to Ardmore, I. T., in June, 1894, at the time Bill Dalton's dead body was there, and there saw Prudy Robertson,—because said testimony is immaterial and irrelevant, and an effort to use the whereabouts of the man's wife, as claimed by the State, against him. We think this evidence was admissible in the light of the record before us.

The State's evidence shows appellant was Jim Jones; that Jim Jones had married Prudy Robertson; that appellant had left with his wife, going in the general direction of the Indian Territory where Bill Dalton's dead body was found about three weeks after the Longview Bank robbery. Dalton was recognized as the man with appellant on the day of the robbery. The record also discloses that Prudy Robertson was present at the trial of this case at Tyler, and was not used by appellant as a witness; and was also present at the trial, and not used by appellant, in Rusk County, where this trial occurred. We think the fact that the witnesses had identified appellant as the party who had married Prudy Robertson, and other witnesses testifying to above state of facts, of appellant and his wife, Prudy Robertson, being seen going in the general direction of the Indian Territory, render clearly admissible the fact that appellant's wife, Prudy Robertson, was seen at the dead body of Bill Dalton. This testimony is admissible as tending to show that appellant is one and the same party that participated in the robbery of the Longview Bank. This was one of the vital issues in the case, and one of the main defenses urged by appellant was that he was not the party who robbed the bank, and was not the party who was with Dalton, and was not the party who married Prudy Robertson. The State's witnesses testifying to facts indicating that he was, it surely was admissible then to prove the whereabouts of Prudy Robertson as a circumstance, however strong or meager it may be, going to identify appellant as one of the parties who participated in the bank robbery. We think the evidence is clearly admissible. Underh. on Ev., 376; Angley v. State, 35 Texas Crim. Rep., 433.

His next ground is: "The court erred in permitting M. S. McGee to state that defendant had a fight, and got shot in the finger; and when said McGee was on the stand State's counsel asked him if he heard of Mrs. D. M. Campbell being robbed of $1700 down in South-west Texas, to which, over appellant's objection, he was allowed to answer, 'Yes.'" The following explanation is appended to the bill of exceptions: "Defendant had proved by the witness that defendant was in Wilson County in 1893, and among the reasons given for remembering that he was there at said time was defendant was wounded in the hand in the spring of that year; this reason being given in witness' redirect examination. Counsel for State then asked him how happened it that he did not give that reason before, and then asked him to tell how he got wounded, and he answered, 'In a fight between old man Nite and Tad Halstead.' He was asked if the wound referred to was not before 1893. He said he thought not. He was then asked if he remembered holding an inquest, as justice of the peace, over the dead body of a man named Reynolds, and also if he did not remember of Mrs. Campbell being robbed of $1700, and asked if these matters did not occur during his last term of office, which was prior to 1893, and if the wounding of defendant's hand did not

occur prior to those incidents.   He answered that those matters did occur in 1892, but thought defendant was there a year afterwards, and was wounded in 1893.   The court permitted the questions for the purpose of refreshing the memory of the witness by these incidents, to show the time when defendant was wounded in the hand.   There was no suggestion of defendant having anything to do with the matters inquired about, but were only referred to as incidents of note, happening during the term of the justice of the peace, to refresh witness' mind, and fix the time with certainty when defendant was wounded.   The testimony was material, as shown by reference to the statement of facts, which shows that defendant was in and about Longview in 1893, and one of the means of identification was the crippled finger.   In other respects than those indicated in the foregoing qualification, this bill is disapproved."   For reasons and purposes indicated in the judge's explanation we think the testimony was admissible.

There was no error in counsel in his argument alluding to the fact that defendant had not explained where he was on May 23, 1894, at the time the bank was robbed.   It was no allusion to his failure to testify.   Arnold v. State, 38 Texas Crim. Rep., 5.

Appellant also contends in the nineteenth, twentieth, and twenty-first subdivisions of his motion for new trial that appellant was not accorded a fair and impartial trial, and that the evidence does not support the verdict, and that a new trial should have been granted to procure the testimony of W. I. Brewer, L. C. Robertson, and —— Christian, and some doctor, not known, who lives somewhere between Glover's ford, in Gregg County, and Albian, on Red River, in Red River County, Texas.   We have examined all these contentions with great care, and are constrained to say that the testimony is not newly discovered testimony, within the contemplation of the statute, and is not material, or probably true.   There was no error in this regard. Clearly, there is no error in refusing to grant a new trial in this case on account of the insufficiency of the evidence, as contended by appellant.   The verdict is in all respects supported by the evidence. The deceased, Buckingham, whom appellant was charged with killing, was killed by appellant's coconspirators in furtherance of the common design to rob the Longview National Bank.   The evidence showed that all four of the parties were acting together in an effort to consummate the proposed robbery.   The killing was done under the common design on the part of all four of the parties to accomplish that purpose. We think the evidence amply supports the contention of the State that appellant committed the murder in the perpetration of robbery.

Appellant's twenty-second assignment contends the court erred in refusing to sustain his motion in arrest of judgment because the second count in the indictment does not specify the elements of robbery, and there is a fatal variance between the proof and the allegations in charging that Buckingham and Learned were killed,

when the proof only shows that Buckingham was killed. There is nothing in this contention.

We have examined all of the assignments of appellant, and find no error in the same. No error appearing in the record, the judgment is in all things affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, absent.