WRIGHT et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. April 30, 1901.)

No. 978.

1. CONSPIRACY — INDICTMENT UNDER FEDERAL STATUTE — DESCRIPTION OF OFFENSE.

An indictment under Rev. St. § 5440, making it an offense "if two or more persons conspire * * * to defraud the United States," is sufficient where it charges that the defendants named "unlawfully did conspire to defraud the United States," etc., followed by a statement of the nature and purpose of the conspiracy and the acts done to effect its object. The use, in connection with the verb "conspire," of other words or phrases of similar import, such as "combine," "confederate," "agree together," or "agree between and among themselves," while usual and proper in indictments for conspiracy, is not essential, since such words add nothing to the meaning expressed by the word "conspire," as defined by lexicographers and as used in the statute, and their omission, if a defect, is one of form only, which does not tend to the prejudice of the defendants, and must therefore be disregarded, under Rev. St. § 1025.

2. CRIMINAL LAW — TRIAL — COMMENTS OF COUNSEL ON FAILURE OF DEFENDANTS TO TESTIFY.

Counsel for the government in a prosecution for conspiracy in his argument to the jury analyzed and criticised the testimony of one of the defendants, and then stated that neither of the other defendants had taken the stand. At this point he was interrupted by an objection, and the court immediately held that he had no right to comment on such fact; and both the court and the district attorney expressed themselves to the effect that such comment was improper, and the district attorney disclaimed any intention of making it. The court also, at request of defendant's attorneys, fully stated the law in that regard in the charge to the jury. Held, that the mere reference to such fact, at once disclaimed by counsel, and in view of the further statements of the court, did not constitute such prejudicial error as would warrant a reversal, especially as the fact that one defendant had testified had presumably called the attention of the jury to the omission of the others to take the stand.

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

The first count in the first indictment is as follows: "The grand jurors of the United States of America, Eastern District of Louisiana, New Orleans division, duly impaneled, sworn, and charged at the November term, A. D. 1898, of the court aforesaid, on their oath present: That William H.

Wright, A. S. Cornet, whose Christian name is to the grand jurors unknown, and Robert H. Cox, all and each late of the district and division thereof aforesaid, on the 1st day of May, A. D. 1897, in the Eastern district of Louisiana, New Orleans division, and within the jurisdiction of this court, unlawfully did conspire to defraud the United States of the title and possession of large tracts of land in the parish of Ascension, Eastern district of Louisiana, of great value, by means of false, feigned, illegal, and fictitious entries of the said lands under homestead laws of the United States, the said lands being then and there public lands of the United States open to entry under said homestead laws at the local land office of the United States in the city of New Orleans, in the state of Louisiana; and thereafter, to effect the object of said conspiracy to defraud the United States. of the lands aforesaid, the said William H. Wright, said A. S. Cornet, and said Robert H. Cox, and each of them, did persuade and induce one Ernest E. Martin and one Karl Fach and one John Siegenthaler to make filings and entries in the said local land office of the United States at New Orleans, Louisiana, in the district and division thereof aforesaid, under said homestead laws of the said public lands of the United States, hereinafter described; and the said William H. Wright, said A. S. Cornet, and said Robert H. Cox, and each of them, to further effect the object of said conspiracy to defraud the United States as aforesaid, thereafter did there exact and obtain from the said Ernest E. Martin and the said Karl Fach and the said John Siegenthaler, prior to the filings and entries made by them, respectively, and hereinafter set forth, a promise and agreement from each of them to transfer and deed to them, the said William H. Wright, said A. S. Cornet, and said Robert H. Cox, one-half of the lands embraced in the filings and entries hereinafter stated, or to pay to them, the said William H. Wright, said A. S. Cornet, and said Robert H. Cox, the sum of $200; and the said Ernest E. Martin, being so persuaded and induced as aforesaid, did make in said local land office of the United States at New Orleans, Louisiana, application No. 18,434, on the 20th day of August, A. D. 1897, under said homestead laws, for the lands known and designated on the maps of public survey of the lands of the United States as the southeast quarter of the southeast quarter, section twenty-two, and west half of southwest quarter, and southeast quarter of southwest quarter, of section twenty-three, township ten south, range three east, Southeastern land district of Louisiana, east of the Mississippi river, in the parish of Ascension, state of Louisiana, and Eastern district thereof, being 160.07 acres, of the value of $200.09; and the said Karl Fach, being so persuaded and induced as aforesaid, did thereafter make in the said local land office of the United States at New Orleans, Louisiana, application No. 18,448, on August 27, A. D. 1897, under said homestead laws, for the lands known and designated on the maps of public survey of the lands of the United States as the east half of the east half of section twenty-three, township ten south, range three east, Southeastern district of Louisiana, east of the Mississippi river, in the parish of Ascension, state of Louisiana, and Eastern district thereof, being 159.88 acres, of the value of $199.85; and the said John Siegenthaler, being so persuaded and induced as aforesaid, did thereafter make in the said local land office of the United States at New Orleans, Louisiana, application No. 18,476, on September 7, A. D. 1897, under said homestead laws, for the lands known and designated on the maps of public survey of the lands of the United States as the northwest quarter of section twenty-five, township ten south, range three east, Southeastern district of Louisiana, east of the Mississippi river, in the parish of Ascension, being 174.21 acres, of the value of $217.76; and the said applications, entries, and filings so made as aforesaid by the said Ernest E. Martin, Karl Fach, and John Siegenthaler, respectively, for said homestead lands, declared, as required by law, and each of them so declared, that the said applications, entries, and filings, respectively, were made for the purpose of actual settlement and cultivation, and that the said applications, entries, and filings were made for the said respective applicants' exclusive benefit, and not directly or indirectly for the benefit or use of any other person or persons whomsoever, whereas, in truth and in fact, the said applications, entries, and filings, and each of them, were made as aforesaid for the benefit of the said William

II. Wright. A. S. Cornet, and Robert H. Cox, as well as for the benefit of the said applicants or entrymen; and the said statements so made as aforesaid in said filings, applications, entries, and affidavits, and in each of them, by the said applicants or entrymen, respectively, were false, as aforesaid, as the said William H. Wright, said A. S. Cornet, and said Robert H. Cox, and each of them, then and there well knew; and they procured the making and filing of said false statements, applications, entries, and affidavits in the said local land office of the United States at New Orleans, Louisiana, for the purpose of further effecting the object of the said conspiracy to defraud the United States of the lands as aforesaid, and so and by such means fraudulently and illegally to obtain from the United States a relinquishment of all the United States' title to said lands, and to obtain a patent for the same, and to acquire for themselves the ownership and deed for one-half portion thereof, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States." The second count charges conspiracy by the defendants on the 1st of May. 1897, to procure the making and filing in the land office at New Orleans of false and fraudulent declarations and affidavits for and concerning the same homestead entries. The first count in the second indictment charges conspiracy by the defendants to defraud the United States of the title and possession of large tracts of land in the parish of Ascension, and charges that, to effect the object of the conspiracy, the defendants called upon Charles Fridge to make a homestead entry in the land office at New Orleans, and offered to pay all fees and expenses; and the defendant Cox, to effect the object of the conspiracy, requested and solicited Fridge to agree and contract to deed and transfer to the defendants one-half of the land embraced in the entry; and the defendant Wright on the 1st day of July, 1897, called upon William Wallace, and requested and solicited him to contest the entry of one Lawrence E. Watkins, who Wright represented had failed to comply with the homestead laws; and Wright solicited Wallace to contest the entry, and offered to pay all fees and expenses, and solicited Wallace to enter into an agreement and contract to deed and transfer to Wright, for the benefit of the defendants, one-half of the lands. The second count in the second indictment charges conspiracy by the defendants on the 1st day of May, 1897, to defraud the United States of the title and possession of large quantities of public lands in the parish of Ascension by means of false and illegal entries, and that the defendants induced and persuaded Lewis R. Marble to make entry No. 18,548 on the 4th day of October, 1897, and Wright and Cox on the 1st day of October. 1897. obtained from Marble an agreement and contract to deed and transfer to the defendants one-half of the land, and Wright and Cox paid the fees and expenses of Marble, and the defendants deposited and filed in the land office at New Orleans, on the 4th day of October, 1897, the application and entry, which declared that Marble made the entry for his own benefit, and that no one else was interested, and they knew the statement to be false. The third count in the second indictment charges conspiracy by the defendants on the 1st day of May, 1897, to procure the making and filing in the land office at New Orleans of false and fraudulent declarations and affidavits concerning homestead entries for lands in Ascension parish. and, to effect the conspiracy. Wright and Cox induced Marble to make entry No. 18,548 on the 4th day of October, 1897, and induced and persuaded Marble to make false declaration and affidavit in connection with the homestead entry, and on the 4th day of October, 1897, procured and caused to be deposited and filed in the local land office at New Orleans the false and fraudulent affidavit of Marble, well knowing it to be false. Each defendant demurred to both indictments. The demurrers were general, averring that the indictments "are not sufficient in law," and that the defendant "is not bound by the law of the land to answer the same," and the defendant therefore "prays judgment that the same may be dismissed and discharged." No demurrer was filed to any separate count. The demurrers were overruled. The two indictments were, on order of the court, consolidated and tried as one case. No question is raised in this court as to the consolidation. The defendants. their demurrers being overruled, pleaded not guilty. During the trial, which lasted several days, bills of exceptions

were reserved. The jury found the defendants guilty. The court sentenced each of the defendants to pay a fine of $100; and Wright, to imprisonment for 12 months; Cox, 6 months; and Cornet, 3 months. The case is brought here on error to reverse this judgment.

Girault Farrar and John D. Rouse (Wm. Grant and Rufus E. Foster, on the brief), for plaintiffs in error.

W. W. Howe, U. S. Atty. (Charles P. Cocke, Asst. U. S. Atty., on the brief).

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Did the circuit court err in overruling the demurrers to the indictment? At common law a conspiracy was the combination of two or more persons to do something, the act to be done, or the means of doing it, being unlawful, or, as more elaborately expressed, a combination of two or more persons for the purpose of accomplishing a criminal or unlawful object, or an object neither criminal nor unlawful, by criminal or unlawful means. There are no common-law offenses against the United States. We therefore look for a statute to sustain every indictment in a federal court, though we often look to the common law for aid in construing the statutes. The indictment in this case is for conspiracy. In some of the counts a conspiracy to defraud the United States is charged, and in others a conspiracy to commit an offense against the United States. The indictment is framed on the following statute:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than one thousand dollars and not more than ten thousand dollars, and to imprisonment not more than two years." Rev. St. U. S. (2d Ed.) § 5440.

The indictment charges a conspiracy by the defendants to defraud the United States of the title and possession of large tracts of land by means of false, feigned, and fictitious entries of lands under the homestead laws. It is settled by the supreme court that such a conspiracy is within the statute. Dealy v. U. S., 152 U. S. 539, 14 Sup. Ct. 680, 38 L. Ed. 545. Several of the counts in the case at bar follow substantially the indictment set out in the Dealy Case, where a conviction was sustained. The indictment here differs from the Dealy indictment in the words used to charge the conspiracy. There it is charged that the defendants "did falsely, unlawfully, and wickedly conspire, combine, confederate, and agree together and among themselves to defraud the United States," etc. Here the charge is that the defendants (naming them) "unlawfully did conspire to defraud the United States," etc. The learned counsel for the defendants point out the alleged defects in the indictment in this case, so that their contention is made clear. They assert:

"The indictment is without precedent. Wharton furnishes the most approved form of an indictment for conspiracy. The charging part is that the defendants 'fraudulently, maliciously, and unlawfully did conspire, com-

bine, confederate, and agree together, between and amongst themselves,' etc. 2 Precedents of Indictments and Pleas, No. 607. The English form, as furnished by Archb. Cr. Prac. & Pl. p. 1048, is, 'did amongst themselves unlawfully conspire, combine, confederate, and agree together,' etc. 'Did unlawfully conspire, combine, confederate, and agree together,' is the language of Crown Circuit Companion, 267. The form furnished by every writer on criminal law is substantially the same, and so is that found in every reported case, where the form appears, that has been examined by us. In all of them the charge is that the defendants did 'confederate and agree together,' or 'between and amongst themselves.' Here it is not averred that the defendants 'confederated or agreed together,' or 'between and amongst themselves'; neither is there any allegation of concerted action alleged, nor any agreement for concerted action of any kind whatever."

In another argument other counsel for the defendants say:

"We challenge the citation of a single specimen indictment in any reported case or book of forms or treatise on criminal pleading, in which a conspiracy is sought to be charged without some one or other of the connective or conjunctive prepositions, 'with,' 'among,' 'between,' 'amongst,' or 'betwixt,' or the adverb 'together,' or the phrase 'each other' preceded by a conjunctive preposition."

An examination of the form books will sustain the contention of counsel that it is usual in charging a conspiracy to use other verbs with the word "conspire," such as "combine" and "confederate" and "agree," and also that it is usual to follow such words, especially the word "agree," by the words "between and among themselves," or similar words. After stating that such words as the foregoing are appropriate to describe the offense, it is said in Wright, Cr. Consp. (Carson) 187, "But others of the same import are equally proper." The statute on which the indictment is framed uses only the word "conspire,"—"if two or more persons conspire." Rev. St. U. S. § 5440. In numerous acts of congress providing for the punishment of conspiracies the same, or substantially the same, language is used. Rev. St. U. S. §§ 5336, 5406, 5407, 5508, 5518, 5519, 5520. These acts show that the word "conspire" is used by the congress as being sufficient to show combination or confederacy, as equivalent to "agree among themselves." In so using the word congress is sustained by the dictionaries and by the best usage. Webster's Dictionary defines "conspire": "To make an agreement, especially secret agreement, to do some act; as to commit treason or a crime, or to do some unlawful deed; to plot together." And the following example is given: "'You have conspired against our royal person.' Shakespeare." Another definition is given as follows: "To concur to one end; to agree." And the following example is given:

"'The press, the pulpit, and the stage
Conspire to censure and expose our age.' Roscommon."

In the Century Dictionary we find the following definition of "conspire":

"(2) To agree, by oath, covenant, or otherwise, to commit a reprehensible or illegal act; engage in a conspiracy; plot; especially, hatch treason. The servants of Ammon conspired against him, and slew the king in his own house.' 2 Kings, xxi. 23. 'The very elements conspire * * * against him.' Cowper, The Task, ii. 139."

When congress enacted that if two or more persons "conspire to defraud the United States," etc., it used the word "conspire" as it is

used by English writers and speakers, and it would have added nothing to. the meaning of the act to have added the word "together," or the words "between themselves." The same may be said of the indictment. To charge that the three defendants (naming them) "did conspire" means that they agreed together or among themselves. While other verbs may be used, the verb "conspire" is certainly the most appropriate to charge a conspiracy. It is not necessary to use other words that are synonyms. While it is true that, along with the phrase "with force and arms," we find in the common-law precedents the word "conspire" accompanied by "confederate, combine, and agree amongst themselves," yet we are cited to no case to show that the word "conspire" would not be sufficient of itself. Forms taken from text-books, or precedents copied from forms, are alone cited as showing the indictment insufficient. If it be conceded that the indictment does not follow the usual and established forms, would that make it subject to demurrer? There is a statute to be considered in this connection:

"No indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." Rev. St. U. S. (2d Ed.) § 1025.

The omission of words that would add nothing to the meaning of an indictment seems so clearly a defect of form only that the application of this statute is apparent. The alleged defect, however, is insisted on with such earnestness that it may not be improper to cite some of the cases construing this curative statute:

In U. S. v. Rhodes (C. C.) 30 Fed. 431, 434, Mr. Justice Brewer, then circuit judge, construing this statute, said:

"While a defendant should be clearly informed in the indictment of the exact and full charge made against him, yet no defect or imperfection in matter of form only—and this includes the manner of stating a fact—which does not tend to his prejudice will vitiate the indictment."

In U. S. v. Chase (C. C.) 27 Fed. 807, Mr. Justice Gray said:

"The first two objections taken to it [the indictment] are that the letter alleged to have been deposited in the mail is imperfectly described, and that the allegation that the defendant knowingly deposited an obscene, lewd, and lascivious letter is defective, because, construed by the technical rules of criminal pleading, the averment is only that the defendant knowingly deposited the letter, and not that he knew its character. * * * But both these objections relate to defects or imperfections in matter of form only, not tending to the prejudice of the defendant, and therefore, under section 1025 of the Revised Statutes, affording no ground for a motion in arrest of judgment after a plea of guilty."

Judge Lowell, in U. S. v. Jackson (C. C.) 2 Fed. 502, 504, construing this statute, said:

"I have held that a particular intent, which made an act a crime by the words of a statute, is part of the substance. On the other hand, mere mistakes, however serious, in expressing the substance of a crime, if the meaning can be understood, I look upon as formal."

In U. S. v. Jolly (D. C.) 37 Fed. 108, 111, Judge Hammond said:

"The last objection is that the second count should be complete within itself, and should not refer to the other count in aid of its averments. That

is undoubtedly the best form of good pleading. Whether a count drawn as this is could be sustained at common law is very doubtful. Perhaps it could not, and there seems to be authority both ways. But our Revised Statutes (section 1025) forbid us to quash the indictment for that defect of form, as I think this clearly is; and we must therefore amend it by overlooking the defect, and reading the averments as if the words of the first count referred to as describing the warrant were inserted in this second count itself. It is not a technical amendment, but amounts to the same thing."

In Connors v. U. S., 158 U. S. 408, 411, 15 Sup. Ct. 952, 39 L. Ed. 1034, Mr. Justice Harlan, referring to defects in an indictment, said:

"Nor, if made by demurrer or by motion and overruled, would it avail on error unless it appeared that the substantial rights of the accused were prejudiced by the refusal of the court to require a more restricted or specific statement of the particular mode in which the offense charged was committed. Rev. St. § 1025. There is no ground whatever to suppose that the accused was taken by surprise in the progress of the trial, or that he was in doubt as to what was the precise offense with which he was charged."

A defendant, of course, has the constitutional right to be informed of the nature and cause of accusation against him. No statute could make valid an indictment that deprived him of such right. But it seems to us that it cannot be doubted that this indictment fully informed the defendants of the nature and cause of accusation. When it was charged that they "conspired" to defraud the United States, the indictment setting out the nature and purpose of the conspiracy, they must have understood that the criminal agreement charged was among themselves. No other person was named. The language is that William H. Wright, A. S. Cornet, and Robert H. Cox "did conspire." No other word was needed to show the alleged members of the conspiracy. It meant that they had agreed together. To apply the language of Mr. Justice Peckham, no one reading the indictment could come to any other conclusion in regard to its meaning, "and when this is the case an indictment is good enough." Price v. U. S., 165 U. S. 311, 315, 17 Sup. Ct. 368, 41 L. Ed. 729. We think that the circuit court did not err in overruling the demurrer to the indictment. So far as it is necessary to protect the real rights of defendants, we cannot adhere too closely to the technicalities of the old common-law practice; but in matters of form, not involving substantial rights, the rigor and technicality of such practice "must yield to the more enlightened jurisprudence of the present." U. S. v. Clark (C. C.) 37 Fed. 106.

We next consider the assignment of error based on the argument of the United States attorney. We cannot more briefly state the point than to quote the entire incident complained of, as it appears in the bill of exceptions:

"The United States attorney, prosecuting in its behalf, in making his closing argument before the jury recalled and analyzed from his notes the testimony of a large number of witnesses for the prosecution, and also analyzed and criticised the testimony of one of the defendants, William H. Wright, who at his own request had taken the stand and testified on his own behalf, and then, proceeding with his address, said: 'Neither Cox nor Cornet has taken the stand in this case—' Whereupon counsel for defendants Cox and Cornet interrupted him before his sentence was concluded, and objected to his making any comment upon the fact that the defendants named had not testified in their own behalf. The United States attorney then continued: 'I have not made a single comment yet. I have not a right to make a com-

ment, and I do not propose to make a comment, upon the fact that they did not testify. The counsel for the defendants cannot guess what I was going to say. I say that these defendants sat like graven images and made no explanation whatever,'—when counsel for defendants again interrupted him and made objection, when· he added, 'by calling other witnesses on their side.' The court said: 'The line is very clearly drawn in such cases, and it is this: As has been stated by the district attorney, he has no right to comment—he did not comment—upon the fact that the two defendants did not take the stand; but he has a perfect right to discuss at any length the fact that they did not call witnesses or produce evidence to discredit the government's case. Any reference made to their not taking the stand themselves is not proper, but a reference to their not calling witnesses to testify in their behalf is proper.' The United States attorney continued: 'I have not commented, and do not comment, upon the fact that these defendants did not get upon the stand. I have no right to do so. The law is perfectly plain that the fact does not create any presumption against them. But I do comment upon the fact that they called no witnesses. I do comment upon the fact that here is a case which, upon the face of the testimony, has excited the whole parish of Ascension for the past three years, and witnesses up there are as plentiful as blackberries, and they have not called a single witness to weaken or demolish the fabric that the government has built against them.' Counsel for defendant Cox then said to the United· States attorney: 'You stated that Cox called no witnesses. As a matter of fact, he called five in connection with Mr. Wright, and they were put upon the stand for the special purpose of discrediting the statement made by Stevens as to matters that transpired at Mr. Cox's house.' The United States attorney then continued: 'Well, I will state this: That neither Cox nor Cornet called any witnesses as to any substantial fact set forth in these indictments. Of course, they called some witnesses, but they did not call such witnesses as they might have done.' To all of which statements of the United States attorney and of the court the defendants Cox and Cornet then and there, when made in the presence of the jury, excepted, and still except."

The act of congress which permits a defendant at his own request to be a witness provides "that his failure to make such request shall not create any presumption against him." 20 Stat. 30, c. 37. To prevent such presumption being created, no hostile comment on the defendant's silence should be permitted in argument before the jury. Any allusion by counsel to the fact that the defendant on trial has failed to testify is improper. The trial court should promptly stop any comment or allusion to the failure of a defendant to testify as a witness. Where such comment is made, and, on objection by the defendant, the court fails or refuses to interfere, and evinces no disapprobation of the course of counsel, and gives no instruction to the jury to remove the probable impression of such comment, the defendant, on writ of error, would be entitled to a new trial. Wilson v. U. S., 149 U. S. 60, 13 Sup. Ct. 765, 37 L. Ed. 650. In this case the district attorney did allude to the failure of two of the defendants to take the stand. He was immediately interrupted by opposing counsel, when he admitted that he had no right to make such comment. The important part of the incident is that the court immediately held that the district attorney had no right to comment on the failure of the defendants to testify. Both the district attorney and the court expressed themselves to the effect that such comment was improper. But it is said that the colloquy necessarily reminded the jury that two of the defendants had not testified. That is probably true. The fact, however, that one of the three did testify necessarily called to their attention the fact that two of the defendants did not take the

stand. If the incident had closed here, it would scarcely have appeared that the defendants were prejudiced substantially. But it did not close here. The court, after the case had been argued, instructed the jury as follows:

"The court is requested to instruct the jury that the fact that neither of the defendants Cox nor Cornet testified in his own behalf must not be considered by the jury. The law gives to a defendant in a criminal case the right to testify in his own behalf, but it does not compel him to do so, and, if he does not, that fact must not be construed in any way to his prejudice." And the court added: "This has already been stated once by the court, and twice by the United States attorney."

In U. S. v. Snyder (C. C.) 14 Fed. 554, the United States attorney made remarks conceded to be improper, but McCrary, circuit judge, held that the error was cured by the correcting charge of the court. In Ruloff v. People, 45 N. Y. 213, it appears that the trial judge repeatedly referred to and commented on the failure of the defendant to be sworn as a witness. But later, his attention being called to his error, he corrected it by telling the jury that there was no law requiring the defendant to be sworn, and no inference to be drawn against him from the fact of his not being sworn. The court held that this corrected the error. It seems to us that both at the time of the colloquy, and subsequently in the charge given, the position assumed by the court conformed to the law. A motion was made for a new trial, based in part on this matter, and the motion was overruled by the court. If it had appeared that the defendants had in any way been prejudiced by this incident, it was the duty of the trial court to grant a new trial. It may be well to note that the exception reserved is to "all of the statements of the United States attorney and of the court." The rulings of the court, at least, seem to have conformed to the wishes of the defendants. We do not think that, on principle or authority, the remarks of the United States attorney and the rulings of the court would justify a reversal of the case. Willingham v. State, 21 Fla. 761; Cross v. State, 68 Ala. 476; Endleman v. U. S., 30 C. C. A. 186, 86 Fed. 456; Nite v. State (Tex. Cr. App.) 54 S. W. 763, 769; State v. Parker, 7 La. Ann. 83.

There are several exceptions raising questions as to the admissibility of evidence offered by the government on the trial. We have carefully considered the several assignments of error based on them. The evidence in each instance was, we think, properly admissible under some one of the counts of the indictment. We do not deem it necessary to discuss these assignments separately. We think that the record contains no reversible error, and that the judgment of the circuit court must be affirmed.

PARDEE, Circuit Judge (dissenting). In my judgment, the trial court erred in overruling the demurrers to the indictments, and to each count thereof, and for this error the judgment of the circuit court should be reversed, and a new trial ordered.

In U. S. v. Cruikshank, 92 U. S. 557, 558, 23 L. Ed. 593, the court said:

"In criminal cases prosecuted under the laws of the United States, the accused has the constitutional right 'to be informed of the nature and cause

of the accusation.' Const. Amend. 6. In U. S. v. Mills, 7 Pet. 142, 8 L. Ed. 637, this was construed to mean that the indictment must set forth the offense 'with clearness and all necessary certainty to apprise the accused of the crime with which he stands charged'; and in U. S. v. Cook, 17 Wall. 174, 21 L. Ed. 539, that 'every ingredient of which the offense is composed must be accurately and clearly alleged.' It is an elementary principle of criminal pleading that where the definition of an offense, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition, but it must state the species. It must descend to particulars. 1 Archb. Cr. Prac. & Pl. 291. The object of the indictment is—First, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent, and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances."

Again, in U. S. v. Carll, 105 U. S. 612, 613, 26 L. Ed. 1135, the court said:

"In an indictment upon a statute, it is not sufficient to set forth the offense in the words of the statute, unless those words, of themselves, fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished; and the fact that the statute in question, read in the light of the common law and of other statutes on the like matter, enables the court to infer the intent of the legislation, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent."

And in Pettibone v. U. S., 148 U. S. 197, 203, 13 Sup. Ct. 545, 37 L. Ed. 422:

"A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means."

In U. S. v. Britton, 108 U. S. 193, 204, 2 Sup. Ct. 534, 27 L. Ed. 700, the supreme court said:

"The offense charged in the counts of this indictment is a conspiracy. This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The provision of the statute that there must be an act done to effect the object of the conspiracy merely affords a locus penitentiæ, so that, before the act done, either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute. It follows as a rule of criminal pleading that, in an indictment for conspiracy under section 5440, the conspiracy must be sufficiently charged, and that it cannot be aided by the averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy. Reg. v. King, 7 Q. B. 782; Com. v. Shedd, 7 Cush. 514."

Taking the definition of "conspiracy" as given in Pettibone v. U. S., supra, and applying the rules declared in U. S. v. Cruikshank, U. S. v. Carll, and U. S. v. Britton, supra, the indictments in this case, and every count in the same, should be held bad, because the charge made in each is only general, to wit, that the defendants "did conspire," etc., without charging the defendants with any combination or agreement or confederation with each other or with any other person or persons, and there is no equivalent to show concert-

ed action. To have committed the offense of conspiracy, they must have combined and agreed together or combined and agreed with some other person or persons; and such combination and agreement should be averred, so that the court and trial jury can determine whether the acts constituting the crime have been committed. To merely charge that the defendants "did conspire" is not to charge specific facts, but to charge a legal conclusion. An indictment, to be sufficient, must inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction if one should be had. For this, facts are to be stated, not conclusions of law alone. See U. S. v. Cruikshank, supra. In regard to defects or imperfections in matters of form under section 1025, Rev. St., so much relied on by my Brethren, I need only again quote from U. S. v. Carll, where an indictment was held bad because, while the defendant was charged that at a certain time and place, feloniously and with intent to defraud, he did pass, utter, and publish a falsely made, forged, counterfeited, and altered obligation and security of the United States, following the statute literally, the court held that the same was defective, because the indictment failed to expressly charge scienter with regard to the passing, uttering, etc.; and the court used this expressive language:

"This indictment, by omitting the allegation contained in the indictment in U. S. v. Howell, 11 Wall. 432, 20 L. Ed. 195, and in all approved precedents, that the defendant knew the instrument which he uttered to be false, forged, and counterfeit, fails to charge him with any crime. The omission is of matter of substance, and not a 'defect or imperfection in matter of form only,' within the meaning of section 1025 of the Revised Statutes."

And so I say that this indictment, by omitting the allegations contained in the indictment in Dealy v. U. S., 152 U. S. 539, 14 Sup. Ct. 680, 38 L. Ed. 545, and in all approved precedents, that the defendants did conspire, combine, confederate, and agree together among themselves, or equivalent thereto, fails to charge any crime, and that the omission is a matter of substance, and not a defect or imperfection in form, within the meaning of section 1025, Rev. St. If we had before us an indictment under section 5339, Rev. St. U. S., which provides that "every person who commits murder" upon the high seas, etc., within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular state, etc., shall suffer death, and which indictment charged that one Richard Roe, in the peace, etc., and on the high seas, etc., within the admiralty jurisdiction of the United States, and out of the jurisdiction of any particular state, did unlawfully murder John Doe, it would seem that nearly all the reasons given by my Brethren in favor of sustaining the indictment in the instant case would be as applicable, and I think as plausible, to maintain the supposed indictment charging Richard Roe with murder. We could say that the statute on which the indictment is framed uses only the word murder,—"every person who commits murder"; and in numerous acts of congress providing for the punishment of homicides the same or substantially the same language is used by the congress as being sufficient to show the killing of a human being with malice prepense or aforethought,

express or implied, and that in so using the word congress is sustained by the dictionaries and by the best usage; for, if we turn to Webster's Dictionary, we find "murder" defined as "the offense of killing a human being with malice prepense or aforethought, express or implied"; and the same, or its equivalent, can doubtless be found in all the dictionaries extant. If we turn to the Bible, we find that from Genesis to Revelations the malicious killing of a human being is recognized as murder; and the sixth commandment, as found in the standard Prayer Book, is, "Thou shalt do no murder." The ancient Chaucer, the father of English poetry, says "Mordre will out;" and in Shakespeare we find, "Macbeth does murder sleep," as he did murder his benefactor King Duncan; and we might say that, when congress enacted that "every person who commits murder," it used the word "murder" as it is used by English writers and speakers, and it would have added nothing to the meaning to have added the words "with malice prepense or aforethought." We can further say, which I have no doubt would be true, that we are cited to no case to show that the word "murder" is not sufficient of itself, and that forms and text-books or precedents copied from forms can alone be cited as showing the indictment insufficient. And I think that we could also cite section 1025, Rev. St., to say that the words omitted in the indictment related only to form, or, as Mr. Justice Brewer expresses it, "mere manner of stating a fact"; and we could go still further, and say that the defendant must have understood, from the use of the word "murder," that the killing charged against him was with malice prepense or aforethought, and that no one reading the indictment could come to any other conclusion than that the indictment charged murder, and cite Mr. Justice Peckham in Price v. U. S., 165 U. S. 315, 17 Sup. Ct. 368, 41 L. Ed. 729: "When this is the case, the indictment is good enough." In the case supposed, notwithstanding the cogency of these reasons, the indictment would be held bad in every court in this country; but the suggested case well illustrates the danger of departing in criminal pleading from well-recognized principles, and particularly from that declared in U. S. v. Carll, supra:

"The fact that the statute in question, read in the light of the common law and of other statutes on a like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent."