GEORGE W. WALKER v. THE STATE.

No. 1623.    Decided March 20, 1912.

Rehearing Denied April 10, 1912.

**1.—Local Option—Evidence—Contemporaneous Shipments—Fictitious Person— Bill of Exceptions.**

Where, upon trial of a violation of the local option law, the appellant accepted a bill of exceptions from which it appeared that he had caused fictitious, contemporaneous consignments of liquor to be made to fictitious persons and which were, in fact, shipped to him, there was no error in admitting this class of testimony to show the character of business in which he was engaged, and that this was the system which he pursued in obtaining intoxicating liquors for sale in local option territory, although a specific sale by defendant had been proved prior to said other consignments of liquor. Following Wagner v. State, 53 Texas Crim. Rep., 306, and other cases.

**2.—Same—Evidence—Express Office—Books—Statutes Construed.**

Under Article 606, Revised Penal Code, which was enacted for the purpose of using the books to be kept by express companies, showing the shipments of intoxicating liquors, by civil officers and grand juries, there was no error in introducing in evidence the record of said express office showing contemporaneous shipments of intoxicating liquors to various fictitious persons as consignees, and which were made subsequent to the sale of intoxicating liquors made by defendant; it likewise appearing that the defendant was the

real consignee of these shipments. Following Myers v. State, 56 Texas Crim. Rep., 222, and other cases.

### 3.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.

Where, upon trial of a violation of the local option law, the evidence tended to show that the defendant had consignments of intoxicating liquor shipped to him in local option territory in the name of fictitious persons, there was no error in the argument of State's counsel declaring that he could not imagine what explanation defendant's counsel would make thereto, etc., as this was not an indirect reference to defendant's failure to testify.

### 4.—Same—Charge of Court—Internal Revenue License—Prima Facie Evidence —Words and Phrases.

Upon trial of a violation of the local option law, there was no error in the court's failure to define the phrase, "prima facie evidence," in connection with United States revenue license, as these words have no peculiar meaning, but are to be construed in their ordinary meaning.

### 5.—Same—Jury and Jury Law—Challenge to the Array.

Where, upon appeal, all the questions presented in appellant's motion as to the selection of the jury had been adversely passed upon in a companion case, there was no reversible error.

Appeal from the District Court of Bowie. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of the local option law; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Hart, Mahaffey & Thomas,* for appellant.—The State having proven that the appellant had taken out United States internal revenue license, the appellant then, in order to explain why he did so and to rebut the fact that he was engaged in the occupation of a retail liquor dealer, which was established prima facie by the proof of the fact that he had taken out the said internal revenue license, introduced evidence to the effect that he took out said license in order that he might sell beerine and tempo and other nonintoxicating drinks, and that he did this under the advice of a man in whom he had confidence. This testimony clearly raised the issue before the jury, as to the intent and purpose which actuated appellant in taking out said license and under the most elementary principles of law he was entitled to have that intent and purpose passed upon by the jury. The court instructed the jury that the license showed prima facie that appellant was engaged in the occupation of a retail liquor dealer. Clearly, then, in view of the fact that appellant had introduced proof rebutting this prima facie case he was entitled, as a matter of right, to have that fact passed upon by the jury. Reynolds v. State, 8 Texas Crim. App., 412; Wheeler v. State, 34 Texas Crim. Rep., 350; Wright v. State, 35 Texas Crim. Rep., 470.

On the question of the insufficiency of the evidence: Spears v. State, 2 Texas Crim. App., 244; Loza v. State, 1 id., 488; Jones v. State, 7 id., 457.

On question of challenge to array of jurors: Hurt v. State, 51

Texas Crim. Rep., 338, 101 S. W. Rep., 806; Lenert v. State, 63 S. W. Rep., 563.

On question of argument of counsel: Banard v. State, 86 S. W. Rep., 760; Washington v. State, 77 S. W. Rep., 810; Hanna v. State, 79 S. W. Rep., 544; Wallace v. State, 81 S. W. Rep., 966.

On question of internal revenue license as prima facie evidence: Floeck v. State, 34 Texas Crim. Rep., 314.

On question of admitting evidence of other consignments of liquor: Parish v. State, 89 S. W. Rep., 830; Harris v. State, 50 Texas Crim. Rep., 411, 98 S. W. Rep., 842; Alberson v. State, 54 Texas Crim. Rep., 8, 111 S. W. Rep., 412; Taylor v. State, 54 Texas Crim. Rep., 90, 111 S. W. Rep., 932.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, tried and convicted of the offense of selling intoxicating liquor in prohibited territory, and his punishment assessed at two years confinement in the State penitentiary.

A witness named Ed Johnson testified he purchased a pint of whisky from appellant on the night of January 31, 1911. Appellant was running a restaurant in Texarkana, and had taken out internal revenue license authorizing him to engage in business at Texarkana as a retail liquor from and after January 1, 1911. It was admitted that prohibition went into effect in Bowie County on April 15, 1910, and has been in force since said date. A witness, W. W. Carrell, was permitted to testify:

"I am, and have been for some two or three years, the agent of the Texas & Pacific Railway Company at Sulphur station, in Bowie County, Texas. Sulphur station is a station on the main line of the Texas & Pacific Railway Company, about eight miles from Texarkana. It is a small place. No one lives there except myself and family. There is a depot there. There is also an express office there, and I am also agent of the express company. I know the defendant, George W. Walker; I have known him about two years. I keep a record in my office of freight delivered to consignee at that place. I also keep a record of express packages delivered to the consignees at that office. I have these records with me. I made the records myself and they are correct. These records show that on January 10, 1911, J. M. Thomas received four casks of whisky by freight at Sulphur; on January 13, J. P. Hendricks received two casks of whisky by freight; on February 3, George Montgomery received two casks of whisky by freight at that office; on February 7, C. Johns received two casks of whisky by freight; on February 9, R. C. Calhoun received two casks of whisky by freight; on February 24, H. C. Davidson received two casks of whisky and one case of beer by express at that station; on February 26, J. B. Frasier re-

ceived two casks of whisky by freight; on March 23, R. T. Rodgers received two casks of whisky by freight; on March 26, George Perkins received four casks of whisky by freight; on April 1, J. C. Morgan received two casks of whisky by freight; on April 20, J. B. Conley received two casks of whisky by freight; on April 29, A. L. Hogan received two casks of whisky by freight; on April 27, J. W. Thompson received two casks of whisky by freight; on April 4, J. H. Thomas received two casks of whisky by freight; on April 27, A. L. Hogan received two casks of whisky by freight; on February 2, A. G. Adcock received two casks of whisky by freight; on February 6, J. P. Barfield received two casks of whisky by freight. In each and all of these shipments I was not acquainted with the consignee, and, under the law, I could not deliver the whisky to the consignee without having him identified. In each instance the defendant, George W. Walker, came to the office with the consignee and identified him as the man to whom the whisky was shipped and I delivered the whisky to the consignees named in the shipment. In each instance defendant and the said consignees came in a hack to the station and left the station in the hack and carried the whisky with them. They came in each instance late in the evening just before dark. I have known the defendant two or three years. During all this time the defendant has lived in Texarkana, Texas. He lives there now."

To all this testimony showing the shipment and delivery of whisky subsequent to January 31 appellant objected and at the conclusion of said witness' testimony the objection was renewed and appellant moved to strike it from the record and exclude same from the consideration of the jury, the objections being that the "evidence was immaterial and irrelevant; that the indictment in this case alleged the offense for which the defendant was on trial to have been committed on the 31st day of January, 1911; that the testimony of the injured party, Johnson, showed, if any offense was committed, that it was committed on the 31st day of January, 1911, and that any testimony of things done by defendant after that time, with reference to shipments of whisky, was immaterial and irrelevant and calculated to prejudice the defendant in the eyes of the jury. The court in approving the bill does so with this qualification: "The witness testified that in each instance the defendant came to the depot with the party in a hack, pulled by two horses, and in each instance they appeared late in the evening, and he knew none of the parties to whom the liquor was delivered. They did not live in that community and he has never seen them since. Other witnesses testified no such parties lived in Texarkana or in Bowie County. Each shipment was from the Paris Liquor Company at Dallas. The evidence shows, I think, that the defendant had each shipment made in a fictitious name and took a party with him to get the liquor, whom he identified as the consignee."

In addition to this qualification, the sheriff's testimony would

support the qualification of the court, that the names of the persons
to whom the liquors were shipped were, in the main, fictitious per-
sons, as no such people lived in Bowie County. The appellant having
accepted the bill as qualified by the court, without objection, and
filed the same as a part of the record, under the decisions of this
court the qualification is binding on us, and under it we must pre-
sume that the liquor was shipped to fictitious persons, and the cir-
cumstances would indicate that this was the method and system
appellant had of obtaining intoxicating liquors. It was shipped to
a little station eight miles from Texarkana, the home of appellant,
and promptly appellant with another would appear, secure the cases
of whisky and drive off. The question here presented has been be-
fore this court frequently and its decisions in regard thereto have
not always been uniform. Appellant cites us to the cases of Parish
v. State, 89 S. W. Rep., 831, and Harris v. State, 98 S. W. Rep.,
842, and they would support his contention. However, this court
in the case of Wagner v. State, 53 Texas Crim. Rep., 306, 109 S.
W. Rep., 169, in a well considered opinion, concurred in by all mem-
bers of the court, overruled those decisions and other cases so hold-
ing, and in Biddy v. State, 52 Texas Crim. Rep., 412, 108 S. W.
Rep., 692, this character of testimony was held to be admissible to
show the character of business one was engaged in who was charged
with violating the local option law. In this case it would appear
that appellant was receiving whisky frequently in case lots. The
Thirty-First Legislature in 1910 passed the following Act:    (Art.
606, P. C.)

"Each and every person in this State, who shall place or have
placed any package or parcel, of whatever nature, containing any
intoxicating liquor, with any express company, railroad company or
other common carrier, for shipment or transportation to any point
in any county, justice precinct, school district, city or town, or sub-
division of a county, within this State, where the sale of intoxicating
liquors has been, or may hereafter be, prohibited under the laws of
this State, shall first place in a conspicuous place, in plain letters,
on such package or parcel the words: 'Intoxicating liquor,' the char-
acter and quantity of such intoxicating liquor, the place from where
shipped, the place of destination and the names of the consignor
and the consignee; and no express company, railroad company, or
other common carrier, or any agent thereof, in this State, shall accept
or receive from any person, firm or corporation, for shipment or
transportation to any such point where the sale of intoxicating liquors
has been, or may hereafter be, prohibited, under the laws of this
State, any such package or parcel, unless the same shall have been
labeled in the manner and form as hereinbefore in this article re-
quired; and no express company, railroad company, or other common
carrier, or any agent thereof, in this State, shall deliver such pack-
age or parcel to any other than the consignee in person. Any agent.

of such express company, railroad company, or other common carrier, having the custody of any book or books required by this law of such express company, railroad company or other common carrier, to be kept, shall, at the request of any person, at any reasonable time during office hours, produce such book or books for inspection by any officer of the law or any member of the grand jury.

"When any express company, railroad company, or other common carrier, within this State, shall receive any package or parcel of whatsoever nature, whether from a point within or without this State, containing any intoxicating liquor, for transportation to any point within any county, justice precinct, school district, city or town, or subdivision of a county, where the sale of intoxicating liquors has been prohibited under the laws of this State, such express company, railroad company, or other common carrier, shall forthwith transport such intoxicating liquor to the place of its destination; and, upon the arrival of same at its place of destination, there shall be entered in a book to be kept for that purpose the names of the consignor and the consignee the exact date of the arrival of such package or parcel at the place of its destination, the place from where shipped, the quantity and character of such intoxicating liquor, as shown on such package or parcel, the exact date delivered to the consignee, if delivered, and the signature of such consignee, who shall sign in person for same before delivery thereof; and such book shall be open at all reasonable hours for inspection by any officer of the law or any member of the grand jury.

"Any agent of any express company, railroad company, or other common carrier, or any other person, who shall violate any of the provisions of this section of this law shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than twenty-five dollars nor more than one hundred dollars, and shall be punished by imprisonment in the county jail for any term not less than twenty nor more than sixty days."

. The Legislature in so enacting had an object and purpose in view, and one of the main purposes is manifest by making the books so kept subject to inspection by any officer of the law or any member of the grand jury. This was to enable the persons charged with the enforcement of the law to detect who were receiving intoxicating liquors in prohibited territory in quantities that would indicate they were being received for illegal purposes, and when the officers, or the grand jury, by obtaining such information are led to an investigation which terminates in an indictment for making illegal sales, to say that such evidence could not be introduced on the trial of the case would defeat one of the purposes of the Legislature. In discussing this question in the Wagner case this court said:

"The State was contending and proved that appellant had made a sale in prohibited territory of intoxicating liquors in violation of law. The defendant's testimony and contention was that no such sale

had been made. With the issue thus sharply drawn, and with a view of supporting this contention, it was competent, as confirmatory of the testimony of this witness, to show that defendant had such an amount of whisky as forbids any reasonable presumption that he had it for his own immediate use, and therefore showing some motive or probability and occasion for appellant to desire to sell it, and, again, as a circumstance to show that he was in a position to make a sale and deliver whisky on such sale. It would clearly be admissible, where a defendant stood charged with a sale of intoxicating liquors, for him to show, by any evidence that would establish the fact, that he did not make such sale, that he had no whisky, that he had bought none, that none had been given to him, none sent or delivered to him, and, therefore, it was impracticable and unlikely, if, indeed, not impossible, for him to have sold whisky. There is no reason why a similar rule should not apply in prosecutions by the State. It can not be that a different rule will apply in favor of defendant than that which should apply in favor of the State. Evidence is admitted to establish the truth of contested issues of fact, and is the means by which the truth of controversies are settled and established. To the average juror, seeking the truth, would it not have some probative force and effect, in a case where a sale was asserted in the evidence on one side and denied by the defendant on the other, to show the possession of whisky reasonably contemporaneous with the sale in such quantities as to raise a reasonable presumption that it was bought for sale, and not for use, and as further showing that the party charged with the offense had the ability to deliver the goods the sale of which is charged? There seems to be no escape in reason from this conclusion." See also Myers v. State, 56 Texas Crim. Rep., 223; Field v. State, 55 Texas Crim. Rep., 527.

By bill of exceptions No. 3 it is shown that the district attorney used the following language: "I am anxious to know what kind of explanation these lawyers are going to make as to why this defendant was going to Sulphur to identify all these men, who were going down there to get whisky. I can not imagine what explanation they will attempt to make; if they do make any explanation, they will be going some," claiming that it was a reference to defendant's failure to testify. It seems to us that the circumstances of defendant being at Sulphur when each and all these cases of whisky were taken from the depot was one that should have been explained, if it could have been explained. The State, under the testimony of the sheriff, was contending that this whisky had been shipped to fictitious persons, and if that was not true, and appellant had identified them, he knew them and certainly knew where they were, and the fact that he had called none of them to testify was a legitimate circumstance to be commented on by the district attorney. We do not think the remarks can be said to be even an indirect reference to the defendant's failure to testify. It has been held that inquiry why defendant did

not deny or show certain facts, which defendant could have shown by other witnesses, is not an indirect attempt to refer to his failure to testify. (Gallegos v. State, 49 Texas Crim. Rep., 115; Huff v. State, 51 Texas Crim. Rep., 445, 103 S. W. Rep., 394; Bagley v. State, 53 Texas Crim. Rep., 324, and cases cited under section 849 of Branch's Crim. Law. In this case all the district attorney said was, he was anxious to know what explanation defendant's counsel would give, and did not go so far as to criticise the failure to introduce the persons to whom the whisky was consigned, if they were not mythical personages.

Appellant complains that the court erred in failing to define what was meant by "prima facie evidence." The appellant requested no special instructions in regard to the matter, but in the motion for a new trial it is insisted that these words when used in connection with the law prohibiting the sale of intoxicating liquors in local option territory, have a peculiar meaning which should be defined and explained. We do not think these words as used in the statute or in the charge have any peculiar meaning, but are to be understood in their ordinary meaning, that is, the possession of license unexplained would be evidence of the fact that appellant was engaged in selling intoxicating liquors.

Appellant insists that the court erred in not sustaining his challenge to the array of jurymen. This question is fully discussed in the case of Antonio Columbo v. State, No. 1628, this day decided. The bill of exceptions is an exact copy of the bill in that case, and for the reasons there given presents no error. All the other questions presented in appellant's motion are decided in the Columbo case, and held adversely to appellant's contention.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied April 10, 1912.—Reporter.]