Claude Boone v. The State.

No. 6072.    Decided April 13, 1921.

Rehearing granted November 30, 1921.

1.—Robbery—Argument of Counsel—Allusion to Defendant's Failure To Testify.

Where, upon trial for robbery, counsel for the State, in his argument stated that if he were accused of an offense of robbery and had been tried once and was on trial again for the offense he would feel he should give the jury the benefit of all his movements on the day of the robbery and that they (meaning the defendant and his counsel) hadn't done it, this was not reversible error, under Article 790, C. C. P. Following Wilkerson v. State, 57 S. W. Rep. 961.

**2.—Same—Rule Stated—Defendant's Failure to Testify—Indirect Comment.**

An indirect comment upon the failure of the accused to testify is quite as hurtful as a direct one, and the statute is not to be avoided by the adroitness of counsel in selecting indirect rather than direct means of disregarding it. Following Miller v. State, 45 Texas Crim. Rep., 517, and other cases.

**3.—Same—Rule Stated—Allusion to Defendant's Failure to Testify.**

The statute is not shown to have been infringed, however, by disclosing that counsel in argument used language which might be construed as an implied or indirect allusion to the failure of the accused to testify. To come within the prohibition, the implication must be a necessary one; that is, one that cannot reasonably be applied to the failure of the accused to produce other testimony than his own. Following Jones v. State, 85 Texas Crim. Rep., 538, and other cases.

**4.—Same—Argument of Counsel—Testimony in Argument not Allowed—Inference.**

Where the specific complaint was that the declaration by State's attorney was in the nature of testimony given by him in his argument, but the record showed on appeal that if the remark of counsel was not properly based upon the evidence it was a legitimate inference from the proven facts, there was no reversible error.

**5.—Same—Evidence—Pardoned Convict—Judgment.**

Where the judgment of conviction was not found in the record on appeal, this court does not feel called upon to discuss the matter at length. Suffice it to say that in the state of the record as presented the identity of the witness with a person convicted of a pardon was sufficiently established, and there was no reversible error. Following Hunnicutt v. State, 20 Texas Crim. App., 639, and other cases.

**6.—Same—Charge of Court—Conspiracy—Practice in Trial Court—Imputing**

**Crimes to Another.**

Where there was no evidence which raised the issue as to the presence of a certain State's witness at the time the offense was committed, there was no error in the court's failure to charge the jury to acquit the defendant if said witness committed the offense. Following Dubose v. State, 10 Texas Crim. App., 230, and other cases.

**7.—Same—Rehearing—Argument of Counsel—Defendant's Failure to Testify.**

While this court adheres to the ruling in the main opinion, that the argument of State's counsel was not reversible error, yet where the language used is on the border line of inhibition, counsel for the State are again admonished to stay within the record in their argument.

**8.—Same—Accomplice—Charge of Court—Insufficiency of the Evidence.**

Where, upon trial of robbery, the conviction depended upon the corroboration of accomplice testimony, and no inculpatory facts were shown which come to the aid of the accomplice in embracing the defendant in the unlawful enterprise, the same was insufficient to sustain the conviction.

**9.—Same—Evidence—Identity of Money.**

There was no error in admitting testimony of the main State's witness that at the former trial of the defendant the money taken from his person at the time of his robbery had been exhibited to him and identified by him.

. Appeal from the District Court of Armstrong. Tried below before the Honorable H. S. Bishop.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Hoover, Hoover & Wills,* for appellant.—On question of argument of counsel: Shaw v. State, 57 Texas Crim. Rep., 474; Flores v. State, 60 id., 25; Deary v. State, 62 id., 352; Miller v. State, 45 id., 517. On question of argument of State's counsel, stating incriminating facts which are merely his own personal knowledge: Tillery v. State, 24 Texas Crim. App., 251; Liner v. State, 70 Texas Crim. Rep., 75.

On question of pardon: Miller v. State, 46 Texas Crim. Rep., 59.

On question of corroboration: Cases cited in opinion.

*C. C. McDonald,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—The appellant was convicted for robbery. The opinion on the former appeal is reported in the 85 Texas Criminal Reports, page 661.

On the present trial, the appellant did not testify. The description of the robbery given by Ramey, the injured party, and the accomplice Beam, are in substantial accord save that Ramey was unable to identify either of his assailants except the woman who was his companion.

Beam testified that it was his wife who was with Ramey; that through her he learned of the possession of the money by Ramey and the contemplated trip, and with them planned the robbery, the appellant agreeing to act with them; that he, in an Overland five-passenger car driven by Boone, followed Ramey and the woman. They passed through Washburn, through Claude, and drove on the Ozark Trail in the direction of Fort Worth through Goodnight, where they stopped for gasoline, and then east to the Denver Railroad. They cut across and got ahead of the other car; stopped the car and waited until Ramey and the woman arrived, and then committed the robbery. After the robbery, Boone drove his car preceding Ramey and the woman and Beam, the latter riding on the running-board, and proceeded to take Ramey to a place off the road where he was tied and left, both cars passing the ranch house with Boone in the lead in returning; and upon reaching the point near Groom, they separated, Boone going north and then west to Amarillo, and Beam and his wife going east through Groom. Beam and his wife and niece came to Amarillo from a distant point in an automobile, and in route agreed to commit the robbery. After reaching Amarillo he met Boone and became acquainted with him. He described several meetings with Boone during his stay in Amarillo prior to the robbery and described several plans for the robbery which had been found inexpedient and were abandoned. They

left Amarillo on the day of the robbery at about 2:30 in the evening.

A bill is presented complaining of the remarks of counsel who stated that "if he were accused of an offense of robbery and had been tried once and was on trial again for the offense that he would feel that he should give the jury the benefit of all his movements on the day of the robbery and that 'they' (meaning the defendant and his counsel) hadn't done it." This is claimed to have violated the statute prohibiting reference in argument to the failure of the accused on trial to testify.

The statute, Article 790, Code of Criminal Procedure, does not prohibit the comment in argument upon the failure of the accused or his counsel to produce evidence. It does prohibit counsel in argument to allude to or comment upon his failure to testify. The plain import of the statute is that counsel for the State, in argument, must refrain from making use of the silence of the accused during his trial against him by direct or indirect means. This statute does not deprive the State's counsel of making, in argument, legitimate use of the evidence or of the absence of evidence. Wilkerson v. State, 57 S. W. Rep., 961; Henry v. State, 54 S. W. Rep., 594; Green v. State, 31 S. W. Rep., 386; Parker v. State, 39 Texas Crim. Rep., 265, 45 S. W. Rep., 812; Matthews v. State, 41 Texas Crim. Rep., 98, 51 S. W. Rep., 915; Branch's Ann. Tex. Penal Code, Sec. 373.

An indirect comment upon the failure of the accused to testify is quite as hurtful as a direct one, and this court has often held that the consequences of the violation of the statute were not to be avoided by the adroitness of counsel in selecting indirect rather than direct means of disregarding it. See Miller v. State, 45 Texas Crim. Rep., 517; Brazell v. State, 33 Texas Crim. Rep., 334; Branch's Ann. Tex. Penal Code, Sec. 374.

The statute is not shown to have been infringed, however, by disclosing that counsel, in argument, used language which might be construed as an implied or indirect allusion to the failure of the accused to testify. To come within the prohibition the implication must be a necessary one, that is, one that cannot reasonably be applied to the failure of the accused to produce other testimony than his own. Where there is other evidence, or the absence of other evidence to which remarks may reasonably have been applied by the jury, the statute is not transgressed. Jackson v. State, 31 Texas Crim. Rep., 342; Arnold v. State, 38 Texas Crim. Rep., 7; Nite v. State, 41 Texas Crim. Rep., 352; Gallegos v. State, 49 Texas Crim. Rep., 116; Huff v. State, 103 S. W. Rep., 395; Bagley v. State, 53 Texas Crim. Rep., 324; Walker v. State, 65 Texas Crim. Rep., 615, 145 S. W. Rep., 904; Bruce v. State, 53 S. W. Rep., 868; Sample v. State, 52 Texas Crim. Rep., 505; Reinhard v. State, 52 Texas Crim. Rep., 63; Wooten v. State, 50 Texas Crim. Rep., 151; Jones v. State, 85 Texas Crim. Rep., 458.

Illustrating the application of this rule, the case of Vickers v. State, 69 Texas Crim. Rep., 628, is useful. The case was one of incest with Ollie Walston, and the following language was used:

"They tell you the prosecuting witness has not been corroborated—they will tell you no one saw the act of intercourse except the two (prosecutrix and defendant). 'Tis true that no one was present at the act of intercourse but these two; 'tis true that Ollie Walston testifies that no one was present when the defendant told her to take the turpentine except herself and the defendant, but gentlemen, she has testified to both of these transactions, and they have not dared to put a witness on the stand to contradict her testimony in any particular."

It is obvious from the quotation that contradiction demanded could come from no source save the accused. The court held and wisely held that the statute was impinged.

The case of Jackson v. State was one for theft of money. In argument counsel said:

"I say they have not proved that the money was Drew's money. Why have they not had Drew's family here, and the other witnesses, to prove that the money was Drew's money? Don't you know that counsel appreciates the importance of the evidence, and if the money was Drew's money, they ought to have had their witnesses here to prove it? And nobody has testified to this jury that the money belonged to defendant, and he has never claimed it since the sheriff took it from him."

The argument was held legitimate. Many like illustrations are available.

The Wooten case, in which the language used and held not to be against the rule, was as follows:

"Here is another circumstance: those heelless shoes. How have they undertaken to rebut that evidence offered here by the State? They failed to offer any testimony explaining, and we challenge them to explain. Those tracks leading from where that sack was found in the water up to the door of his house. How do they explain that stove-door and smoothing-iron found in the sack? Now, do they undertake to rebut that evidence?"

Gallegos case where the language used was:

"Where was the defendant and his brother Elijio on the night that Antonio Montoya was murdered? Defendant is a married man, with a wife and children. Why does he not show where he ate his supper on that night? Why does he not show where he slept on that night? Again, I ask where was he on that night? Defendant has friends. Why does he not introduce witnesses to establish his whereabouts on that night?"

In the Nite case (41 Texas Crim. Rep., 352) in which there was a conviction for homicide committed in perpetration of a bank robbery, the court said:

"There was no error of counsel in his argument alluding to the fact that defendant had not explained where he was on May 23, 1894, at the time the bank was robbed. It was no allusion to his failure to testify."

In the case before us, the evidence showed that the appellant resided in the city of Amarillo; that he had associates and business connections there; that he was there at the time of his arrest after the robbery. It was in evidence that he had been previously tried for the same offense. He relied on an alibi. We are not in accord with his contention that in the use of the language which we have quoted, from his bill of exceptions, the State's attorney did violence to the statute prohibiting the reference of the failure of the accused to testify. To sanction this view, it would be necessary to assume that the whereabouts of the appellant on the day of the robbery were known to no one but himself. Such an assumption does not arise from the evidence, but the contrary is suggested. He is shown to have had acquaintances. He was in the employ of the Overland Automobile Company, a business concern. His occupation was such as to bring him in touch with many people.

The State's evidence goes to show that he was absent from the city of Amarillo during a large part of the day upon which the robbery took place; that he was seen on the road traveled by the offenders in various places in an Overland automobile. It may be conceded that on some of these occasions there were no others with him, but it is his theory that it was not he that the State's witnesses saw and that he was elsewhere. To meet the requirements of the law which the appellant invokes, it would be necessary that the state of the evidence be such as to exclude the knowledge of his presence elsewhere by others. Quoting from the opinion of the court, written by Presiding Judge Davidson, the court said:

"In order to make this bill complete, it should have ben shown by its terms that there were no other witnesses present except defendant and Bolt, or it should have shown, if it was a question of alibi, that there were no other witnesses by whom appellant could prove the alibi except himself." (Huff v. State, 103 S. W. Rep., 395.)

To sanction appellant's contention would result in giving the statute a construction which has heretofore been rejected and be obnoxious to the rule often declared and uniformly followed by this court.

In the same bill of exceptions the proposition is urged that the District Attorney, in the course of his argument, said: "The main public road from Groom ran through the town of Conway." This argument was made, as shown by the bill, upon the testimony of witnesses by the name of Walker and in connection with the theory of the State that the appellant was seen at Conway on the day the offense was committed and that he, at the time, was en route to Amarillo.

The specific complaint being that the declaration was in the nature of testimony given by the State's attorney in his argument. The Walkers (father and son) both declared that they were acquainted with the appellant. One said: "I live six miles from Conway on the public road that runs between Groom and Amarillo. I think that is the main traveled road." The other testified that he saw a man, whom he took to be the appellant, riding in an Overland automobile pass through

Conway going west; that the road through Conway was a public road running east and west and that a man coming from Claude and going to Amarillo would be traveling west. It was the theory of the testimony of the accomplice Beam that the appellant went from Claude in the direction of Amarillo and that he and the accomplices separated after passing through Groom. We think if the remark complained of was not properly based upon the evidence, it was a legitimate inference from proven facts.

The witness James W. Beam, who testified to the identity of the appellant as one of the participants in the robbery, had been convicted of robbery and a bill of exceptions reflects the complaint of the manner in which his pardon was proved. It seems that when the witness was presented, a statement was made by counsel for the appellant to the effect that they were willing to admit that the witness had been convicted of a felony and had been pardoned. Later, as we understand the record, an objection was urged against the competency of the witness upon the ground that the counsel was mistaken touching the pardon, and in connection with the matter, a pardon was introduced issued to Jim Bean, who had been indicted for the robbery of A. T. Ramey. The judgment of conviction we do not find in the record. We do not feel called upon to discuss the matter at length, suffice it to say that in the state of the record as presented, we think the identity of the witness with the person convicted and pardoned was sufficiently established. Hunnicutt v. State, 20 Texas Crim. App., 639; Martin v. State, 21 Texas Crim. App., 11; Petty v. State, 65 S. W. Rep., 917.

From Underhill on Criminal Evidence, Sec. 208, we take the following quotation:

"A pardon is valid, though it incorrectly state the date of the conviction, or even state an impossible date, if it was intended to cover and does cover the offense. Parol evidence is admissible to identify the person and the particular conviction of crime named in the pardon."

The sufficiency of the evidence is challenged upon the theory that the evidence corroborating the accomplice is insufficient. One of the men who committed the robbery was dressed in unionalls, and had a cloth over his face and a pistol in his hand, and was in company with another man in a five-passenger automobile which was stopped by the roadside. A woman in company with Ramey assisted in robbing him. This occurred while Ramey and the woman were sitting in an automobile known as a Briscoe roadster, which Ramey had bought for the woman. After robbing him, the party, including the man in unionalls, rode in the respective cars to the point where Ramey was bound and left. Later the witness Beam and the women were arrested while in company with each other near the place and in the vicinity of Groom, at which point, according to the witness Beam, the appellant, who had taken part in the robbery and who was the possessor and operator of the five-passenger car, had separated from his associates in the robbery. Beam and the woman had been in Amarillo for some time.

Beam testified that they were husband and wife. They, while in Amarillo, had stopped at separate hotels and gone by different names.

Ramey was an associate of the woman and was expecting to receive a sum of money. This Beam learned through her and, according to his testimony, communicated to the appellant, and upon this information the conspiracy to rob Ramey was formed by the three. There was evidence that in his negotiations for the purchase of the car for the woman, the appellant, who was an automobile salesman, came in contact with the two. He was shown to have visited the woman at her hotel on several occasions. These visits and appellant's acquaintance with the woman were testified to by several witnesses.

On the day of the robbery, by the testimony of witnesses, Beam was placed in proximity to the appellant in an automobile. The route taken by appellant and Beam from the State's standpoint, was described by Beam in detail, as was also the route taken by them after the robbery; and parties along the route testified to circumstances tending to corroborate Beam in his statement with reference to these occurrences. In this connection, Mrs. Barker, who lived along the route, saw two cars answering the description given by Beam, in one of which, a five-passenger old car, one man was riding, and in the other a man and woman, with a man standing on the running-board. This is in accord with Beam's description, also the testimony of Ramey, and a witness who knew Boone testified to having seen him in company with another in the town of Goodnight, at a time coinciding with the statement of the accomplice.

Walker and his son testified to facts in accord with the statement of the accomplice to the effect that after the robbery the parties remained in company until they reached Groom and there separated, appellant going to Amarillo. Unionalls were found in the automobile in the place of business of the appellant, as was also a pistol. These were identified by the accomplice as those worn and possessed by the appellant at the time of the robbery. The manner of his dress was also testified to by Ramey though he was unable to give any specific identification of the wearing apparel.

It doubtless could not be said that any one of the corroborating facts would meet the requirements of the law, but taken collectively we think the contrary is true. It is not essential that the corroborative facts should identify the appellant as the robber. If such were the requirements, the testimony of the accomplice could be dispensed with. The corroborating evidence must *tend* to connect the accused with the offense. Such is the language of the statute. Code of Crim. Procedure, Art. 801. Such is the interpretation in Meyers v. State, 7 Texas Crim. App., 640; Wright v. State, 47 Texas Crim. Rep., 433; Nourse v. State, 2 Texas Crim. App., 304; Nite v. State, 41 Texas Crim. App., 352.

In part, the word "tend" is defined to mean "to serve, contribute or conduce in some degree or way; to have a more or less direct bearing or effect." (Century Dictionary and Webster's Dictionary.)

"It does not contemplate conjecture but that the testimony shall have a tendency to prove the averments in the indictment." (Words & Phrases, Vol. 4.)

The corroborating evidence must be more than enough to raise a suspicion but it need not be sufficient, standing alone, to show guilt. (Hoyle v. State, 4 Texas Crim. App., 239; Cyc. of Law & Procedure, Vol. 12, page 456.)

Circumstantial as well as direct evidence is available. Corpus Juris, Vol. 16, page 705.

Aside from the evidence of the accomplice to the specific fact that the appellant had aided in planning and executing the robbery, the corroborating evidence is such that the jury may have found that the appellant, soon after the robbery, was in company with the accomplice while they were taking the injured party to the point where he was bound and left.

The witness, Mrs. Barker, did not identify the appellant as the man she saw driving his car in company with the roadster containing the three parties mentioned, but her description of what she saw, in connection with other facts and circumstances that have been mentioned, doubtless led the jury to the conclusion that the appellant was one of the parties. He had been seen before in the vicinity in company with a man whom the jury doubtless found to be the accomplice Beam and was seen by the Walkers later on his return to Amarillo. The evidence goes to show that the pistol and the apparel which bore the same appearance as that worn by the assailant of Ramey and described by him was found in the car which was under the control of the appellant. These and other facts to which we have adverted, we think, are such that in view of the verdict of the jury, we are not warranted in concluding that the evidence other than that of the accomplice did not *tend* to identify the appellant as one of the offenders.

The fact that the niece of Beam had been associated with the accomplices, and according to Beam's testimony, had at one time joined the conspiracy, did not require that the court instruct the jury to acquit the appellant if the niece committed the offense. We find no evidence that raises the issue as to her presence at the time the offense was committed. In cases in which the State relies on circumstantial evidence alone, the courts have gone far in holding admissible evidence that another may have committed the offense. Dubose v. State, 10 Texas Crim. App., 230; Taylor v. State, 81 Texas Crim. App., 359. Even in cases of that character, the evidence is rejected though another have motive to commit the offense where there is no evidence of his opportunity to do so. Shultz v. State, 13 Texas Reports, 401; Hamlin v. State, 39 Texas Crim. Rep., 606; Porch v. State, 50 Texas Crim. Rep., 335; Taylor v. State, 87 Texas Crim. Rep., 330, 221 S. W. Rep., 615.

Of course, in cases where the evidence raises the issue as to whether the accused or another committed the offense, a charge submitting the

issue in an affirmative way from the appellant's standpoint should not be refused. Wallace v. State, 65 Texas Crim. Rep., 654, 145 S. W. Rep., 925. But in the instant case we do not regard the evidence as raising this issue.

We think the testimony of the witness Ramey that at the former trial of the appellant the money taken from his person at the time of the robbery had been exhibited to him and he identified it as his own was not objectionable. If its admissibility was questionable, we fail to appreciate its harmful effect. The money had been taken from the witness Beam upon his arrest. The fact that he took it from Ramey was not a subject of controversy.

An examination of the additional matters presented on the appeal reveals to us no question which, in our judgment, requires discussion. Nothing is presented for review which, in our opinion, authorizes a reversal of the judgment. It is therefore affirmed.

*Affirmed.*

ON REHEARING.

November 30, 1921.

HAWKINS, JUDGE.—Appellant insists that we were in error in holding the language complained of in argument, and which is set out in our opinion, was not a reference to appellant's failure to testify. It will be noted that our announcement is based on the proposition that to come within the prohibition of the statute the language complained of must be of such a character as to necessarily be an implication upon the failure to testify, and not one as to failure to produce other evidence. In our judgment the facts brought the case within the latter realm. However, there can be no doubt that the language used is on the border line of inhibition, and upon another state of facts might be held erroneous. We say this much for the purpose of calling the attention of prosecuting officers to the exercise of more care in their selection of language when discussing a question so fraught with danger. If the purpose of the argument was to charge the defense with the failure to produce witnesses other than accused, words could have been chosen which would have borne no uncertain meaning. The matter is not further reviewed because we have reached the conclusion that the motion for rehearing must be sustained on another ground.

Upon a closer analysis of the testimony, in the light of the motion for rehearing, we believe we were in error in holding the evidence upon corroboration of an accomplice sufficient to meet the requirements of the law. The test is this. "Eliminate from the case the evidence of an accomplice, and then examine the evidence of the other witnesses with the view to ascertain if there be inculpatory evidence—evidence tending to connect the defendant with the offense. If there is, the accomplice is corroborated: if there is no inculpatory evidence, there is no

corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him." (Welden v. State, 10 Texas Crim. App., 400). Beam (the accomplice), made out a complete case, but in order to apply the test his testimony will be eliminated from consideration, and the other evidence examined for the discovery, if possible, of inculpatory facts. Our comments on the evidence where the ought to be necessary in immediate connection with it, will be placed in brackets in order not to confuse them with the evidence itself.

Ramey had been acquainted with appellant for about five years; had associated with him some, and had frequent conversations with him. He does not undertake to identify the party acting with Beam as appellant. He says that Beam had on a black suit of clothes, and the other party was dressed in unionalls; this third party was rather bent over, and had a white dirty rag over his face; in general appearance he corresponded with the weight and height of appellant; the party had an old hat pulled tight down over his ears, and he only saw him for an instant; he would not testify whether this third party was a man or woman. He did testify that within his knowledge a woman who was supposed to be Beam's niece had come through with them in a car from Kansas, and that the two women wore unionalls; that within his knowledge this niece wore unionalls, especially when traveling. Ramey did not even undertake to say that after he was robbed the other car preceded or followed the one in which he was carried to the place where he was tied and left; but says that after he had been tied and left in the canyon he heard the noise of only one car starting on the hill. He does not undertake to describe the car in which appellant was supposed to be riding by its make, or otherwise, than it appeared to be an old car. A pistol was exhibited to Ramey during the trial; he testified that he could not say it resembled the one the unidentified person had at the time of the robbery, but as near as he could recollect he had seen the sun reflect on it, and he thought it was a silver gun, but would not say for certain whether it was a silver gun or a black one.

Mrs. Allie Barker testified that at or about the date of the robbery she saw two cars pass her place, going east; the car leading was an old looking car, but she was unable to recollect whether it was a five passenger car or not; there was just one man in this car; the other car following just behind was a new car, with three passengers in it, two men and one woman. One of the men in the new car was riding on the running board. She does not pretend to say who the parties were in either car; she did not know who they were, and paid no particular attention to them; all she knew was that two cars passed, such as she had described. (Mrs. Barker's evidence corroborated Beam as to the movements of the cars after the robbery, but does not in any way aid in connecting appellant with it. The man driving the old car could have been any one else as well as he.)

On the day of the robbery V. C. Kersey saw appellant in the town of Goodnight riding in an Overland car, and had another man in the car with him. This was some time about the middle of the afternoon. Witness did not talk to appellant, he just stopped at the garage, got some gasoline and drove on. There was nothing unusual in the occurrence, according to the witness. (The witness does not undertake in any way to describe the man who was with appellant on this occasion, and neither does he undertake to say that it was the accomplice witness Beam.)

The witnesses Green Walker and Herman Walker testified that on the day before they learned of the robbery having occurred they were at Conway between three and five o'clock in the afternoon; they saw a car pass through Conway, going west, at a high rate of speed; they thought the driver of the car was appellant, and thought it was an Overland automobile; they would not testify positively that the party driving the car was appellant, but were under the impression that it was.

On the day of the robbery, about one o'clock in the afternoon, witness Hollman saw appellant and a man whom he did not know in a car on the street in Amarillo. He did not undertake to describe the car, except that it was a dark color. The man with appellant was a medium sized man, dark complexioned, weighing from one hundred fifty to one hundred and sixty pounds, and rather tall. Witness saw this man get out of the car, go across the street, step up on the sidewalk, remain for a little while, then turn and go back to the car, where appellant had remained. They drove off in the car in a westerly direction, stopping in front of the Amarillo hotel. Prior to this time the witness had seen a medium sized woman come out of the side door of the Elk hotel and go into the Briscoe Sales Agency place of business. Witness did not know who this woman was, but saw the man who was with appellant go across the street to the Briscoe Sales Agency and saw him go back to the car where appellant was, and then drive south. Witness says this was about one o'clock in the afternoon. (There is nothing in the record which would indicate to our minds whether this description in any way meets the description of the accomplice Beam, and nothing to indicate whether the man whom Hollman described in any way tallies with the man whom Kersey says was with appellant at the time the gasoline was purchased. Beam was before the jury, and the description may have aided them; but we have nothing in the record to aid us in appraising the value of the description.)

The testimony of the witness Gray is unsatisfactory and of little probative force. He claims that on or about the date of the robbery he remembers that appellant came to his place of business in a car, but had no recollection of who was with him; he would not be positive as to the time. He could not remember whether appellant told him where he had been. (This witness did not undertake to say what kind of car appellant was driving at the time.) He also recollects that at some

90 T. C.—25

time a woman drove into his place of business in a Briscoe car, which he thinks was a roadster, and he thinks it was about an hour and a half after the woman left before appellant left. He had no recollection of appellant taking an Overland car out of his place of business on the day of the robbery or bringing a car back. Witness disclaims that he put any overalls in a car in his place of business, but said that sometimes they threw their work overalls in the cars that were standing in there. Later on this witness says that he does not remember of any man being at his place of business with appellant on the day of the robbery; that appellant was there so frequently he may have been there, but he had no recollection of it.

Mr. Roach, sheriff, testified that on the day of the robbery appellant was working for the Texas Overland Company of Amarillo; that on the next day he went to this place of business and a gun was taken out of a car at this place, and also some unionalls, two pair. He could not identify the pistol or unionalls as being the ones found in the car, but said they resembled the ones taken out of the car. (There is no testimony of any kind in the record showing that the car out of which these things were taken had ever been in the possession of appellant, or even that it was an Overland car. There is no testimony that appellant was driving this particular car, or had anything to do with it on the day of the alleged robbery.)

There is some testimony in the record that appellant was the agent for the Willys-Knight car, and had been trying to sell to Beam's wife, through Ramey, one of these cars. Appellant had been seen with her on one or two occasions prior to the robbery, and was seen talking to her in Amarillo on the day of, and prior to the robbery.

The foregoing constitutes all the salient testimony before us, outside of the evidence of Beam, the accomplice. Beam and his wife were confessedly parties to the robbery. That some other party aided them is established by Ramey; but that such party was appellant is not sufficiently shown, even though he may have been seen in their company, and was associating with them before the robbery. Roquemore v. State, 54 Texas Crim. Rep., 592. The corroborating evidence must of itself, and without the aid of the testimony of the accomplice, tend in some degree to connect the accused with the commission of the offense. Hoyle v. State, 4 Texas Crim. App., 245. The purpose of the statute was to prohibit a conviction unless there was some evidence entirely outside that of the accomplice, which of itself, and without the aid of the accomplice, tends at least to connect accused with the offense committed. We have become convinced that the evidence as it appears in the record before us falls short of meeting the tests required. No inculpatory facts are shown which come to the aid of the accomplice in embracing appellant in the unlawful enterprise. There is some corroboration as to some facts sworn to by him relative to the movements of the cars subsequent to the robbery; but the extent of it is only that some cars, occupied by somebody, moved in the manner claimed by

Beam; no witness identifies appellant in this connection; and no witness identifies appellant and Beam as having been seen together in a car on the day of the robbery.

Having reached the conclusion that the corroborative evidence is insufficient, the motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*