NO. 07-05-0187-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MARCH 7, 2007

_____

AARON D. PUGH,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-408,028; HON. CECIL G. PURYEAR, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Aaron D. Pugh challenges his conviction for burglary of a habitation with intent to commit robbery by contending 1) the trial court erred in denying his motion for mistrial due to the State's allegedly withholding exculpatory evidence, 2) the evidence is insufficient to corroborate the testimony of the accomplice witness, 3) the trial court erred in failing to charge the jury on the voluntariness of the statement given by the accomplice witness, and

4) the evidence is factually insufficient to support the conviction.  We overrule each issue and affirm the judgment of the trial court.

## *Background*

On January 14, 2000, during the early morning hours, the home of Mike Hogan at Buffalo Springs Lake near Lubbock was broken into and robbed of approximately $100,000.  Hogan, his live-in girlfriend Maria Guillot, and his five-year-old daughter were in the home at the time.  Two men  dressed in black and wearing gloves and black ski masks tied up Hogan and Guillot, and beat and abused Hogan in order to force him to reveal where he kept cash that they believed was in the residence.  After the men finally found the money, they left the house.

The two men involved in the crime were identified by Julie MacKenney, who had formerly worked as a topless dancer with Guillot.  She met Hogan through Guillot and had driven from Amarillo to Lubbock on several occasions to engage in sexual relations with Hogan and Guillot for money.  During one of the times she had been at Hogan's home, he had  shown her large amounts of cash that he kept there.  MacKenney then told a number of people, including appellant, about the money at Hogan's house.

According to MacKenney, appellant and his brother George Franklin wanted to rob Hogan, and she went with them to help them do so.  MacKenney drew a map of the house, purchased duct tape for appellant at a Walmart store in Lubbock, drove appellant's red Suburban into the Buffalo Springs Lake area while appellant and Franklin hid in the vehicle, and waited outside the house while appellant and Franklin broke into the home and robbed and beat Hogan.  She received $5000 out of the stolen money for her efforts.

2

### *Issue 1 - Motion for Mistrial*

Appellant claims in his first issue that the trial court erred in failing to grant his motion for mistrial. The motion was based on alleged exculpatory evidence which the State allegedly failed to reveal to appellant. That evidence concerned the fact that Hogan originally gave a statement in which he positively identified the perpetrators as having worn black *leather* ski masks. However, prior to testifying at trial and after one of the prosecutors informed Hogan that some of the evidence did not match his statement, Hogan changed his testimony to indicate that the ski masks could have been of a material other than leather. Appellant's counsel was informed of this during trial and questioned Hogan about it before the jury. The next day he moved for a mistrial due to a purported *Brady*[1] violation. The motion was denied.

At no time did appellant seek a continuance to address the purported effect of discovering the changed testimony. This was fatal because such was necessary to preserve error. *See Apolinar v. State*, 106 S.W.3d 407, 421 (Tex. App.–Houston [1st Dist.] 2003), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005) (stating that the defendant's failure to request a continuance when *Brady* material is disclosed at trial waives error or indicates that the delay in receiving the evidence was not truly prejudicial); *Gutierrez v. State*, 85 S.W.3d 446, 452 (Tex. App.–Austin 2002, pet. ref'd) (stating that when previously withheld evidence is disclosed at trial, the defendant's failure to request a continuance waives any *Brady* violation).

---

[1]*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Nor did appellant attempt to explain to the trial court how disclosing the changed testimony would have affected the outcome. That was his burden. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002) (holding that the defendant bears the burden of showing that, in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure). And, his insinuation, via his appellate brief, that it "could have" is not enough to fill the void. *Id.* (stating that the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, is not enough).

### *Issue 2 - Corroboration*

Appellant claims in his second issue that the evidence is insufficient to corroborate the testimony of MacKenney who was an accomplice as a matter of law. We disagree.

A defendant cannot be convicted upon the testimony of an accomplice unless it is corroborated by other evidence tending to connect the defendant with the offense committed. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). In conducting a sufficiency review under the accomplice witness rule, the court eliminates the accomplice testimony from consideration and examines the record to see if any evidence *tends* to connect the defendant to the commission of the offense. *Solomon v. State,* 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). The evidence does not have to directly link the defendant to the crime or establish his guilt beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). In addition, the phrase "tending to connect" has been interpreted as "'to serve, contribute or conduce in some degree or way . . . to have a more or less direct bearing or effect,' and while not contemplating conjecture, 'has

4

a tendency to prove the averments in the indictment.'" *Holladay v. State,* 709 S.W.2d 194, 198 (Tex. Crim. App. 1986), *quoting Boone v. State,* 90 Tex. Crim. 374, 235 S.W. 580 (1921). This standard does not present a high threshold but simply reflects a legislative determination that accomplice testimony should be viewed with some caution. *In re C.M.G.,* 905 S.W.2d 56, 58 (Tex. App.–Austin 1995, no writ). Moreover, each case must be decided upon its own facts and circumstances. *Reed v. State,* 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).

The following evidence appears in the record which corroborates the testimony of MacKenney.[2] First, Hogan testified that the men who robbed him wore gloves, black clothes, and black ski masks. Second, appellant's red Suburban, along with the visage of Franklin and another person, can be seen on a security camera of a Walmart store in Amarillo before the assault on January 13. Third, Franklin can be seen on video purchasing a black mask and two pairs of cotton gloves at that store at 11:23 p.m. Next, three hours later, on January 14 at 2:23 a.m., Franklin and appellant, who is dressed in black, appear on a video camera at a Walmart store in Lubbock purchasing spark plugs (which could purportedly be used to cut glass). Fifth, just prior to that, at 2:15 a.m., MacKenney is seen getting out of the Suburban at the same Walmart store and purchasing duct tape and a black marker. Sixth, appellant's red Suburban was seen entering the Buffalo Springs Lake area by a front gate attendant at 3:06 a.m. on January 14 and exiting about an hour later; the burglary and assault occurred around that time. Seventh, a black

---

[2]MacKenney testified that she purchased duct tape and a black marker at the Walmart store in Lubbock. She also stated that appellant and his brother went into the same store and bought spark plugs which appellant or his brother said could be used to cut glass. MacKenney then drove the Suburban past the guard gate entering the Buffalo Springs Lake area.

5

ski mask was found at the home of appellant. While these facts by themselves do not prove that appellant committed the robbery, they tend to connect him to it. Appellant argues that this case is similar to *Castenada v. State,* 682 S.W.2d 535 (Tex. Crim. App. 1984) in which the only evidence linking the defendant to the pool hall where the victims were murdered was that of an accomplice witness. We find the case at bar distinguishable due to the fact that appellant, his brother, and MacKenney, all of whom resided in Amarillo, were seen on videotape in Lubbock in the early morning hours in appellant's vehicle a short time before the robbery, and appellant's vehicle was identified entering and leaving Hogan's residential area.

### Issue 3 - Jury Charge

Next, appellant complains of the trial court's failure to include an instruction to the jury pursuant to article 38.23 of the Code of Criminal Procedure. We find no error.

Article 38.23 provides that in any case where the evidence raises an issue as to whether evidence was obtained by an officer in violation of the federal constitution or laws or the state constitution or laws, the jury shall be instructed that if it believes that (or has reasonable doubt whether) the evidence was obtained illegally, the jury should disregard any such evidence. TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). Appellant sought the instruction with respect to a written statement given by MacKenney to police on January 28, 2004, which he alleged was not voluntarily made. The court denied the request finding that article 38.23 applies only to a statement sought to be used against the person who made the statement.

An accused does not have standing to complain about evidence that is illegally obtained unless it was done so in violation of his own rights. *Chavez v. State,* 9 S.W.3d

6

817, 819 (Tex. Crim. App. 2000). So, even if MacKenney's statement was coerced as appellant claims, the rights affected were those of MacKenney, not appellant. In other words, he lacked standing to raise the issue.

Nor does appellant's reliance on *Garza v. State,* 771 S.W.2d 549 (Tex. Crim. App. 1989) cause us to hold otherwise. There, the statement was provided by a passenger in Garza's car. Since the car was illegally stopped, the witness' statement would be considered fruit of the improper detention, and the defendant had standing to suppress that fruit. In short, the evidence was obtained through an improper stop of Garza. The appellant here has not shown how any coercion that may have been directed against MacKenney transgressed any of his rights.

### *Issue 4 - Sufficiency of the Evidence*

Finally, appellant contends the evidence is factually insufficient to support his conviction. We again disagree.

The standard by which we review a factual sufficiency challenge is well established. We refer the parties to *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006) for its explanation.

Appellant points out that without MacKenney's testimony, the only evidence that implicates him is the ski mask found at his home and the use of his vehicle in the offense. Further, he argues that MacKenney and two other black men could have traveled to Lubbock to rob Hogan. Nevertheless, MacKenney's testimony was before the jury and even though her credibility was subject to challenge, there also was videotape evidence that not only connected her with appellant in Lubbock immediately before the crime

7

occurred but also confirmed her version of events. The jury was free to accept some, all, or none of her testimony.  In sum, and when weighed against the entire record, the verdict is not manifestly unjust; nor does the entirety of the record undermine our confidence in the verdict.

The judgment of the trial court is affirmed.


Brian Quinn
Chief Justice


Do not publish.